LEE, Justice, for the Court:
W. Lynn Jordan filed suit in the Circuit Court of the First Judicial District of Hinds County, Honorable Charles T. Barber, presiding, against West Center Apartments, Ltd. and First National Bank of Jackson (FNB) to recover a real estate commission in the sum of $210,000 for the sale of an apartment complex, the Windsor Park Apartments. Prior to trial, Jordan nonsuit-ed as to West Center Apartments, Ltd. and the trial proceeded against First National Bank of Jackson. At the conclusion of Jordan’s case in chief, FNB moved for a directed verdict in its favor, which motion was granted. Jordan has appealed to this Court and we reverse.
The appellant has assigned two errors in the trial below but the only assignment necessary for consideration is whether or not the lower court erred in sustaining the motion of FNB for a directed verdict.
The evidence favorable to the appellant reflects that on and prior to April 19, 1978, the Windsor Park Apartments, an apartment complex located in Jackson, Mississippi, was owned by West Center Apartments, Ltd., a limited partnership composed of Barnmiss Properties, Inc., a corporation, and National Investment Company, Inc., a corporation, the latter being the managing general partner of the limited partnership. The president of National Investment Company, Inc. was Wayne L. Nix, who also was employed by FNB as a senior vice-president in charge of the bank’s legal department. FNB was mortgagee in a deed of trust on the apartment property in the approximate amount of $4,400,000. Mr. Nix was trustee in the mortgage.
Mr. V. O. Russell, salesman for appellant, learned that the apartment property was for sale and on April 19,1978, appellant and Russell went to the office of Mr. Nix to discuss sale of the property. Mr. Nix told appellant that he had the authority to sell the property without approval of the limited partnership and that the bank wanted to negotiate the sale. Appellant was given a listing with a 5% commission based upon a selling price of $4,200,000, although the listing was not exclusive. On the following day, appellant wrote Mr. Nix a letter requesting that he register appellant’s client, Burton Goldberg, as a prospective purchaser. Mr. Nix previously had told appellant that his interest would be protected if appellant did get him a buyer. Appellant also requested that Mr. Nix register Limehouse Properties, Inc. of Charleston, South Carolina, as a prospective buyer. Appellant showed the property both to Burton Goldberg and Limehouse Properties, Inc. Prior to October 16, 1978, Mr. Nix sustained a serious heart attack and his assistant, Harris Collier, succeeded to Nix’s position. Appellant contacted Collier, informed him that he and Mr. Nix had agreed upon a 5% commission and that he was attempting to find a purchaser for the apartment property. Collier said that he was agreeable to the 5% commission arrangement.
Another realty group became interested in the sale of Windsor Park Apartments and made the acquaintance of Burton Goldberg. After a series of negotiations, the sale of said property was effected by that group to Burton Goldberg for the sum of $4,200,000. None of the parties informed appellant concerning what was going on, but Harris Collier did tell the chairman of the board of FNB that appellant was expecting a commission from the sale of the property. As a result, FNB obtained an indemnity agreement from the realty group wherein FNB would be indemnified against a claim for commission by appellant.
In ruling on the motion for directed verdict, the lower court used the following language:
*847 BY THE COURT: As to the point of procuring agent, I believe that’s a question for the jury, so I’ll overrule your motion on the point.
As to the portion of the motion directed to agency, prior to the Court beginning trial of this cause, it hurriedly read the pleadings and the matter of agency has stuck in the Court’s mind since reading the pleadings; that Mr. Nix was undoubtedly a double agent. He had two principals. This case so far is completely void as to which hat he was wearing, so to speak — who he was acting for at the time the so-called contract was made between them.
The Court has settled in its own mind that in order for the defendant First National Bank of Jackson to be liable in this case at all, Mr. Nix would have to have been acting at the time of that particular proposed contract for and on behalf of the First National Bank and there is nothing in the record to indicate to the Court who he was acting for.
Therefore, the Court will have to sustain the motion.
The declaration charged that “at all times material hereto, Nix was the agent and sub-agent of the defendant owner and the agent of the defendant bank (FNB), acting within the scope of his apparent and real authority. Said bank and owner both knew of and ratified the dual agency of Mr. Nix. At all times material hereto, the bank was the agent of the owner, acting through Nix and one Harris Collier, within the scope of its authority. Nix and the said Harris Collier, from April through October 1978 led plaintiff to believe they were acting solely as agents for the bank”.
In its separate answer, FNB admitted the above-mentioned allegations in the following language: This defendant admits that at all times, Wayne L. Nix was an agent of this defendant and was also an agent of the other defendant in this action, and was acting within the scope of his separate authorities as agent for each of the two' defendants. This defendant admits that at all material times Harris Collier was an agent of this defendant and was acting within the scope of his authority as such agent”.
Prior to resting the case, appellant’s attorney read the following stipulation to the jury:
BY MR. BARRETT: May it please the Court and members of the jury, it is stipulated ánd agreed by and between the parties that First National Bank of Jackson admits that on April 19, 1978, Wayne L. Nix was a Senior Vice-President of this defendant, was the attorney in charge of this defendant’s Legal Department, and also was the President of National Investment Company, Inc., the managing general partner of the other defendant in this action.
This defendant admits that at all material times, Wayne L. Nix was an agent of this defendant and also was agent of the other defendant in this action and was acting in the scope of his separate authority as agent for each of the two defendants.
This defendant admits that at all material times, Harris Collier was an agent of this defendant and was acting within the scope of his authority as such agent.
In Georgia-Pacific Corporation v. Blakeney, 353 So.2d 769 (Miss.1978), quoting from Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss.1975), we said:
The rule, in determining whether a motion for directed verdict should be granted, requires the trial judge to consider the evidence on behalf of the party against whom a directed verdict is requested, along with all reasonable inferences, in the light most favorable to said party, disregard any evidence of the other party in conflict therewith, and, if the evidence and reasonable inferences to be drawn therefrom would support a verdict for such party, the motion for directed verdict should be denied... .
(353 So.2d at 772)
Applying the principle enunciated above to the record in the present case, we are of the opinion that the motion for directed verdict should have been denied. We again call to the attention of the trial *848 courts our comments in Claiborne v. Greer, 354 So.2d 1109 (Miss.1978):
Here, the case was tried in its entirety, with nothing remaining except instructions, arguments of counsel and deliberation of the jury. We remind trial judges that, after cases have been heard, where there are close questions of fact and law, requests for directed verdicts and peremptory instructions should be denied. Often times juries return verdicts which agree with the thinking of the trial judge. After verdict, if the trial judge is of the opinion that he should have granted a motion for directed verdict or request for peremptory instruction, he may then sustain a motion for judgment n. o. v. In the event of an appeal to this Court, the matter probably could be resolved finally without the necessity and expense of another trial.
(354 So.2d at 1111)
The appellee argues that a realty commission is the liability only of the owner of property. However, in C. Buck Bush Realty Co. v. Whetstone, 266 So.2d 135 (Miss.1972), this Court said:
As a general rule a person employing a broker to find a purchaser for property is liable to the broker for his services regardless of his interest in the property or the fact that he is not the owner thereof.
(266 So.2d at 138)
For the reasons stated, the judgment of the lower court is reversed and the cause is remanded for a new trial on all issues.
REVERSED AND REMANDED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.