# YAZOO & M. V. R. Co. *v.* LEE.*

(Division B.   Nov. 28, 1927.   Suggestion of Error Overruled Jan. 9, 1928.)

[114 So. 866.   No. 26644.]

1. RAILROADS.  *Railroad's negligence as to pedestrian held for jury.*
   The facts in evidence examined and found sufficient to warrant the submission of the question of negligence to the jury.

2. RAILROADS.  *Whether pedestrian seen by engineer in time to stop train was trespasser or licensee held immaterial.*
   Where a person was killed while walking upon a railroad track by an engine of the company, and where such person was seen by the engineer in sufficient time to stop the engine and train if that were necessary to prevent the injury, it is immaterial whether the person walking on the track was a trespasser or a mere licensee, the case being determinable on the doctrine of duty when a person is seen upon the track, and not upon the question whether he could have been seen before the injury.

3. DEATH.  *Where death is instantaneous, submitting to jury for consideration as damages injury to deceased is error.*
   In a case where death is instantaneous it is error to submit to the jury for consideration as damages injury to the deceased as such, *Belzoni Hardwood Co.* v. *Cinquimani*, 137 Miss. 72, 102 So. 470, cited.

4. RAILROADS.  *Charge, authorizing punitive damages for death of adult warned by signals, held error on engineer's testimony as to stopping on discovering necessity.*
   In a case where an adult person was walking upon the track and was seen by the engineer operating an approaching train, and such person was apparently in possession of his faculties, proper signals were sounded, and the engineer testified that he expected the person to get onto a place of safety in response to the signals, and that when it occurred to him that the person might not seek his safety he did all in his power to stop the train to prevent the injury, it is error to give a charge that the company is liable for punitive damages, although it may be simple negligence not to have discovered earlier the necessity of stopping.

5. RAILROADS. *Engineer may assume adult pedestrian will seek safety and need not slacken speed until circumstances show pedestrian will not leave track.*

An engineer operating a train upon a railroad track has the right to assume that an adult person walking along such track is in possession of his normal faculties, and that he will note the alarm given and take due precaution for his own safety, and he is under no duty to slacken the speed of his train in such case until circumstances arise to bring to his mind or should bring to his mind the reflection that the person is not a normal person and has not heard the alarm and will probably not seek his safety in due time.

6. APPEAL AND ERROR. *To be reviewable, objection to argument at trial must be made at time and exceptions taken before submission to jury.*

The court will not take notice of an objection to an argument made in the progress of the trial of the cause, unless objection was made at the time and exceptions taken in the lower court before the submission of the case to the jury.

7. APPEAL AND ERROR. *Appellate court presumes trial judge exercised legal judgment on merits in overruling motion for new trial, regardless of statement that whole matter should be passed on by supreme court.*

Where, on the motion for a new trial based upon an alleged improper argument, the trial court states, "Gentlemen, since this matter will be passed upon by the supreme court, regardless of my idea, it is my idea that the whole matter should be passed on by the supreme court, and the motion will be overruled," followed by an order of the court entered upon its minutes reciting that the motion was heard and considered by the court, the court will presume the trial judge exercised an honest legal judgment upon the merits of the motion.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 864, n. 35; p. 865, n. 37; p. 954, n. 29, 31; 4CJ, p. 782, n. 45; Death, 17CJ, p. 1314, n. 75; p. 1337, n. 18; Railroads, 33Cyc, p. 783, n. 49; p. 795, n. 96, 97; p. 798, n. 18; p. 800, n. 25; p. 801, n. 26; p. 897, n. 96; p. 911, n. 84. As to duty and liability of railroad company after discovery of person on track, see annotation in 69 L. R. A. 550, et seq., 22 R. C. L. 965; 3 R. C. L. Supp. 1297.

APPEAL from circuit court of Scott county.
HON. G. E. WILSON, Judge.

Action by Mrs. Mary Busic Lee against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed as to liability, but reversed, and remanded for a new trial as to damages alone.

*Hirsch, Dent & Landau, Chas. N. Birch, H. D. Minor, Clinton H. McKay, R. H. & J. H. Thompson* and *May, Sanders & McLaurin,* for appellant.

A directed verdict should have been granted the defendant or, in any event, the verdict and judgment should be set aside because opposed to the great weight of the evidence. The plaintiff seems to have tried her case on the theory that the case was identical in character with the case of *A. & V. Ry. Co.* v. *Kelly,* 126 Miss. 276.

There are three essential points in which facts in instant case differ from facts in Kelly case. (a) In *Kelly case* (126 Miss. 276) the party fatally injured was a deaf mute child—in the instant case the party fatally injured was an adult of wide experience. (b) In the Kelly case it was difficult for the child to get off the track onto a place where there was safe footing—in the instant case there was no such difficulty. (c) In the Kelly case the injured party was a child and naturally without any experience as to the schedule or operation of trains—in the instant case the injured party was familiar with the train schedule and got his mail and paper daily from the very train which killed him. (d) The engineer in the Kelly case testified that up to the time he applied his brakes in emergency and blew his whistle and did whatever else he could to stop the train, the boy had been clear of the track and was not in danger. The countervailing testimony by several witnesses was that the boy was walking along the track the whole time. It is manifest, therefore, that the jury in that case rejected the testimony of the engineer in its entirety as they had the right to do in view of the testimony for the plaintiff,

thus leaving the Railroad Company without any testimony at all that any care was exercised by the engineer.

In the present case the jury had no right to reject the testimony of this appellant's engineer for there was no countervailing evidence. On the contrary, the testimony of the engineer here is supported by a number of witnesses for the plaintiff and by the physical facts.

The engineer exercised that decree of care which an engineer of ordinary prudence would exercise under similar circumstances and conditions as to stopping the train. Elliott on Railroads, sec. 1796; 33 Cyc., p. 800, et seq.; *M. & O. R. R. Co.* v. *Stroud,* 64 Miss. 793; *New Orleans R. R. Co.* v. *Bourgeois,* 66 Miss. 5; *Dooly* v. *Railroad,* 69 Miss. 648; *Illinois Central R. R. Co.* v. *Lee,* 71 Miss. 895; *Moorehead* v. *Railroad,* 84 Miss. 123; *Nichols* v. *Railroad,* 83 Miss. 139; *Railroad* v. *Smith,* 111 Miss. 471; *Y. & M. V. R. R. Co.* v. *Huff,* 111 Miss. 491; *Hubbard* v. *Southern Ry. Co.,* 120 Miss. 841; *Illinois Central R. R. Co.* v. *Ash,* 128 Miss. 417; 22 R. C. L.; p. 964, sec. 198.

Verdict contrary to great weight of convincing evidence. *Railroad Co.* v. *Bennett,* 127 Miss. 415. The trial judge erred in failing to weigh the evidence and determine whether the verdict was opposed to the great weight of the convincing evidence. *Dodson* v. *State,* 67 Miss. 331; *Felton* v. *Spiro,* 78 Fed. 576; *Railroad* v. *Lee,* 95 Tenn. 388; *Railroad* v. *Brown,* 96 Tenn. 562; *Railroad* v. *Neely,* 102 Tenn. 701; 20 R. C. L., p. 273; *Tate* v. *Gray,* 4 Sneed. (Tenn.) —.

The trial court erred in admitting evidence that the railroad was used as a walkway between Dr. Lee's home and the station at Foot. There was no allegation in the declaration of any such use. *Hines* v. *McCullers,* 121 Miss. 675.

The court erred in admitting evidence as to the wealth of the defendant, and in instructing at all as to punitive damages, and in instructing the jury that wealth of de-

fendant might be taken into consideration. *Lopez* v. *Jackson,* 80 Miss. 684.

The court erred in the instruction to the jury as to the measure of damages. *Davis* v. *McCullers,* 126 Miss. 533.

*E. O. Sykes, W. C. Eastland* and *Mize & Dudley,* for appellee.

Counsel for appellant first argue that they were entitled to a peremptory instruction. They appreciate that the Kelly and Holly cases are serious obstacles in their path and attempt to differentiate these cases from the case at bar. For instance, they say that Kelly was a boy twelve years old while Dr. Lee was an adult. An infant twelve years old is subject exactly to the same rules and regulations relating to negligence and contributory negligence as is an adult. Below that age, and to six years, the presumption is that he is subject to the same rules, but that presumption may be rebutted. Consequently there is no legal difference here.

Counsel cites the case of *M. & O. R. R. Co.* v. *Stroud,* 64 Miss. 793. Under this authority the engineer was bound to stop the train.

Again under *Moorehead* v. *Railroad Company,* 84 Miss. 123, which in turn is a quotation from the *Christian case,* 71 Miss. 237, was it not apparent to this engineer or ought it not to have been apparent to him that Dr. Lee was in peril, and then was it not the duty of the engineer to do what he could to stop that train and save human life?

We don't think it necessary to further refer to the authorities cited by counsel for appellant. Some of them deal with the contributory negligence when that was a complete bar to recovery, but the above two cases, however, announce the general rules consistently followed by this court. In addition to those authorities, we may be pardoned for briefly referring the court to the

following cases where the facts are very similar to the one at bar. *Fuller* v. *Illinois Central R. R. Co.,* 100 Miss. 706; *Yellow Pine Trustees* v. *Holley,* 142 Miss. 247; *A. & V. R. R. Co.* v. *Kelly,* 126 Miss. 278, 88 So. 707; *Jamison* v. *I. C. R. R. Co.,* 63 Miss. 33; *New Orleans M. & C. R. Co.* v. *Harrison,* 105 Miss. 18, 61 So. 655, and authorities therein cited; *Gulf, M. & N. R. Co.* v. *Arrington,* 107 So. 378.

Counsel next argue that the verdict is contrary to the great weight of convincing testimony. On the contrary, as we have attempted to point out to the court, the verdict absolutely coincides with the overwhelming weight of testimony. We submit that there could have been on other verdict than the one rendered.

It is next argued that the trial judge erred in failing to weigh the evidence on a motion for a new trial. Counsel argue this proposition at length and cite some Federal court and Tennessee decisions, which are interesting but not in point. This entire argument is based on the remarks made by the circuit judge at the conclusion of the hearing of the motion for a new trial as appears on record. The attention of the court is called to the fact that this is not the order which overruled the motion. In the order it says that the court did consider the motion and the evidence and is of the opinion that it should be overruled. This is absolutely passing on everything that the circuit judge is required to pass on.

The question of the reinstatement of a former judgment or verdict of a jury was last discussed by this court, as we recollect, in *Belzoni Hardwood Co.* v. *Cinquimani,* 137 Miss. 72, 102 So. 470. The court did not reinstate this judgment, but the question of the reinstatement of judgments is therein discussed. We have not analyzed the authorities cited by counsel on this proposition because we do not think they are in point for the above reasons. However, in glancing through the brief of counsel, we note that these opinions or remarks of the

judges seem to constitute a part of the order or judgment of the court, which is not true here.

Counsel next argue that it was error to admit testimony that the railroad was used as a walkway between Dr. Lee's home and the station. The declaration in this case was framed under the prima-facie statute. The plaintiff had a right to show the jury all of the physical conditions as they existed at Foot at the time of the accident. This is always done in every case. The jury are entitled to understand and know the surroundings. It had a bearing on the fact that Dr. Lee certainly was not committing suicide.

The court instructed the jury that Dr. Lee was a trespasser. The instructions for the plaintiff are absolutely correct. It was not attempted to invoke any use of this pathway in an instruction, or to get an instruction on anything that was not alleged in the declaration as did the plaintiff in the case of *Hines* v. *McCullers,* 121 Miss. 675, which is relied upon by counsel for appellant. In this case the jury, by their instruction, were confined exactly to the proper issues. The only error in these instructions is that they were entirely too favorable to the appellant.

As to damages see *Y. & M. V. R. Co.* v. *Cockerham,* 134 Miss. 898; *Railroad Co.* v. *Moore,* 101 Miss. 780.

Argued orally by *Chas. N. Burch,* for appellant, and *W. C. Eastland* and *E. O. Sykes,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Mrs. Mary Busic Lee, brought suit against the railroad company for the death of her husband, Dr. Lee, who was killed on the 23d day of November, 1926, by a train of the appellant, while the deceased, Dr. Lee, was walking along the track of the railroad company with his back to an approaching train. It was alleged in the declaration that Dr. Lee's perilous position

on the said track was known to the defendant's servants and agents in charge of said engine and train of cars, "but, notwithstanding the premises, the defendant's servants and agents in charge of the said engine and train of cars did then and there willfully, wantonly, negligently, and unlawfully run said engine and train of cars against Dr. Lee, which said engine and train of cars struck and killed the said Dr. Lee," and damages were demanded in the sum of one hundred thousand dollars.

The defendant filed a plea of the general issue to the declaration, and gave notice under the general issue that Dr. Lee lost his life as the result of his own gross negligence; that he was a trespasser upon the track of the railroad company and that he was using the track in a way that he knew was highly dangerous; that he paid no attention to his own safety; that he did not stop, look, or listen for defendant's train while he was using defendant's track on which he knew the train was to run; that he did not get off of the track or out of the way of the running train when he knew or should have known of its approach, and as a result thereof his own rash and imprudent conduct caused his death.

It appears from the evidence that Dr. Lee was a physician and lived at a flag station on the Yazoo & Mississippi Valley Railroad in Washington county, and that he was a surgeon of the railroad company; that his home and office were close to the track, and that his lands were on both sides of the track; that shortly before his death he had gone to visit a negro patient, and, on leaving his patient, started for the station at Foot, walking on the edge of the cross-ties; that the passenger train of the defendant which caused Dr. Lee's death was approaching the said flag station; that the engineer first saw Dr. Lee on the track at a distance of something like one thousand feet from where Dr. Lee was walking; that about a mile above the place at which Dr. Lee was struck there was another flag stop, or crossing, for which the engineer sounded the whistle; that on approaching Foot,

and at a distance of about one thousand or one thousand and fifty feet from the station, he blew the signal whistle—two long blasts and two short ones—for the road crossing at Foot; that the engineer saw Dr. Lee walking along the track at said distance, but expected him to get off the track; that between said place where the whistle was blown for the crossing and the place where the deceased was walking another whistle was blown in response to a signal from the conductor not to stop at Foot, which signal consisted of three blasts; that Dr. Lee did not respond to these signals, but continued to walk, with his back toward the approaching train, down the track; that a number of persons, seeing Dr. Lee's position on the track and the approaching train, ran toward him, shouting and waiving and gesticulating, trying to attract his attention and warn him of his danger.

Witnesses for the plaintiff testified that Dr. Lee was walking with his head lowered and his hands in his pants pocket, and that he made no response to the signals from the engine. Some of these witnesses who tried to attract the attention of Dr. Lee testified that the engineer could have seen them as they waved and shouted and tried to warn Dr. Lee of his danger.

It was testified that when the train got within two hundred fifty feet of Dr. Lee the stock alarm whistle was sounded continuously until Dr. Lee was struck; that Dr. Lee was struck and his skull fractured; and that he was unconscious from the time he was struck until his death, which occurred in a short while.

The engineer testified that he did not see Dr. Lee until he was within one thousand and fifty feet of him, at which time he gave the signal as above stated, and thought that Dr. Lee would respond to it and get off the track; that he did not know Dr. Lee personally and did not know that his hearing was impaired; that it was a frequent thing to see a man on the track who remained on the track until the train got nearly to him and the alarm was given, and then step off the track onto a

position of safety; that frequently persons who were thus walking on the track would stay on the track until the engineer put on the brakes and applied the air to his train, and would then step off the track and laugh at him. He testified that when he was something like two hundred fifty feet from Dr. Lee it occurred to him that Dr. Lee might not have heard the signals, and that thereupon he shut off the steam and applied the air brakes, opened the sand boxes, and did everything possible to stop the train, but that the train could not be stopped under five hundred to five hundred fifty feet of the crossing at the speed it was going, which was about thirty-five miles per hour.

The train consisted of an engine, tender, and three cars, and it stopped within little more than the train's length from where Dr. Lee was struck. The engineer further testified that the train was slowing down when it struck Dr. Lee; that, if it had not been slowing down, he could not have stopped it within the distance he did stop after striking Dr. Lee.

The witnesses for the plaintiff testified that they could not see that the train was slowing down any until it struck Dr. Lee. One party on the train, who was expecting to disembark at Foot, testified that he saw Dr. Lee; that, if the train slowed down, he could not tell it. Several witnesses for the plaintiff testified to the effect that the train did not slow down until it struck Dr. Lee.

It was in proof that Dr. Lee was very hard of hearing, and that sometimes it was necessary to write on a pad for him to get the conversation. It was also testified that he was hard of hearing, but could be talked to and made to understand. Dr. Lee left no children, but left the plaintiff, his wife, as his only heir.

It is insisted (1) that the defendant should have been granted a peremptory instruction, because under the evidence there was no showing of any negligence on the part of the railroad company, and that the physical facts, considered in connection with the evidence, would disclose

that there was no conflict of evidence for the jury to pass upon, and that the engineer did all that he was required to do.

It is argued that the engineer had a right to assume that the person walking on the track was possessed of his normal faculties and could hear the signals; that under the facts disclosed in the evidence the defendant was under no duty to slacken the speed of the train until the engineer saw or understood that Dr. Lee had not apprehended the signals; and that the proof shows without dispute that after the engineer became aware that Dr. Lee was not conscious of his peril he did all that it was possible to do to prevent the injury.

The engineer testified that when he discovered that Dr. Lee did not observe the signals he realized that he might not have heard them, and that he applied the brakes, shut off the steam, sounded the alarm, and did all that it was possible to do, but that he could not stop the train at that time before it struck Dr. Lee, and could not therefore prevent the injury.

It is argued by the appellee that it is an open country along the railroad between the station above Foot and Foot, and that the engineer could have seen for a much greater distance than one thousand and fifty feet that Dr. Lee was in a perilous condition; that, when Dr. Lee did not respond to the signals in such a way as to indicate that he had heard and would observe them, the engineer was under duty, as a reasonable man, to take every precaution to prevent the injury, and take them in time to stop his train before striking him.

We are of the opinion that the evidence, all taken together, warranted the court in submitting the question of the negligence of the engineer to the jury. We do not think it important that the engineer could have seen Dr. Lee prior to the time he testified that he did see him. It is not an infrequent practice for people to walk upon the tracks of the railroad company, and there is proof in this record that there was, for a considerable period of

time, a practice of walking on this track to the flag stop. At any rate, it is not an unusual practice for persons to walk upon the railroad tracks, and, when the signal is given, to respond to it and get onto a place of safety without requiring the train to slacken its speed.

We think the engineer has the right, in the case of a full-grown person walking on the track, to assume that such person is in possession of all his faculties and will hear the signals when given; that, where a signal is given in ample time to permit the person walking on the track to get off, or where there is sufficient distance between the train and the person to permit the train to be brought to a stop in the event such person does not get off the track, the engineer is not called upon to slacken his speed or give the signal until he has reached such distance as would make it possible by reasonable effort to prevent the injury.

In the case before us there is no doubt as to the engineer's ability to stop the train after he first saw Dr. Lee upon the track, if the engineer had understood and appreciated his difficulty of hearing, or that he was in fact in a position of such peril as would necessitate the slackening of the speed or stopping of the train to prevent his injury. We think, however, that, when an engineer sees a person upon the track and gives the signal or alarm and it is not responded to, when other persons are making an effort to warn the person on the track of his danger, which other persons could be seen by the engineer, this constitutes enough evidence to put a reasonable man on notice that the person on the track is in a position of peril and is unconscious of his peril, and, that being true, it is his duty to get his train under such control as will enable him to slacken the speed or stop the train to prevent injury to such person.

Questions like the one here involved are questions of practical experience, and are for the solution of the jury. There was, therefore, in our opinion, sufficient evidence for the jury to reach the conclusion that the engineer

was negligent in not slackening the speed of his train earlier than he did so as to prevent injury to Dr. Lee.

It is next contended that, if there was any evidence to go to the jury which would tend to make out negligence, such evidence is against the overwhelming weight of the convincing evidence, and that under the authority of *Railroad Co.* v. *Bennett,* 127 Miss. 413, 90 So. 113, the evidence should be set aside, and a new trial awarded for that reason. We do not think that this case comes within the principle announced in the above case.

It is next insisted that the court erred in admitting evidence that the railroad track was used as a walkway between Dr. Lee's home and the station at Foot, because there was no allegation in the declaration of any such use. We think this would only be important where there was a failure to observe the presence of a party on the track a sufficient length of time to do what was necessary to prevent an injury and where it would be the duty of the railroad company to be on the lookout for persons upon the track. The question here is unimportant, because the engineer did see the person on the track in sufficient time to take whatever action was necessary under the circumstances, and whether it owed any duty or not to keep a lookout is immaterial, because the engineer did see the party on the track in sufficient time to bring his train to a stop had he considered the situation necessitated his doing so. Of course, the railroad company is usually not under duty to maintain a lookout for persons on the track unless they have a right to be upon the track. All persons are aware of the fact that a railroad track is an improper place to walk as a walkway, and that the railroad has a right to the use of its tracks. Nevertheless, if a person is upon the track and in a position of peril, and his position is seen and his peril understood, taking all the circumstances of the case into consideration the duty arises to prevent the injury if it can be reasonably done. It is manifest from the record before us that Dr. Lee was guilty of gross negligence

in being upon the track, and under the circumstances shown in the record he was especially so on account of the impairment of his hearing.

It is assigned for error that the court erred in granting instruction No. 3 for the plaintiff, which is in the following language:

"The court instructs the jury for the plaintiff that, if the jury should find for the plaintiff, the law entitled the party suing to recover such damages as the jury may determine to be just, taking into consideration all of the damages of every kind to the deceased, Dr. Lee, and all damages of every kind to the party interested in the suit; and in this case if you find for the plaintiff, that she is entitled to recover for the death of her husband, you may take into consideration such damages, if any, shown by the testimony."

In *Belzoni Hardwood Co.* v. *Cinquimani,* 137 Miss. 72, 102 So. 470, it was held that under section 501 of Hemingway's Code, providing for recovery of all damages of every kind to all parties interested in action for wrongful death, the present net value of the life expectancy of the decedent is not recoverable where action is limited to damages to decedent. In the opinion at page 95 of the Mississippi Report (102 So. 474) the court said:

"The present statute unites in on suit all causes of action which formerly existed for injuries causing the death of any party, and provides that the fact that death was instantaneous shall, in no case, affect the right of recovery, but it does affect the amount of the recovery as some of the usual elements of damages are necessarily absent in case of instant death. The right of recovery, however, remains unimpaired in such case, and the suit may be maintained by the designated kindred, if there be any such, or by the personal representative of the deceased person, for the benefit of all persons entitled under the law to recover, and there may be recovered such damages as are allowed by the statute, and as have accrued, but as said by the court in the case of *New Deem-*

*er Mfg. Co.* v. *Alexander,* 122 Miss. 859, 85 So. 104, a case in which death was instantaneous, 'the rights other than for loss of companionship, protection, and society of all the parties is rooted in the earnings of the decedent during his expectancy,' and we think that these earnings are recoverable as damages to the parties interested, and not as damages to the decedent. Consequently, we do not think that the present net value of the life expectancy is recoverable where, as here, the action is limited to damages to the decedent, and that the court did not commit error in the present case in excluding the evidence offered to show this expectancy.''

In other words, the court in this case held that where death was instantaneous there was no damage to the decedent, and the only damage recoverable in a case of instant death is the damage to other parties. In the present case therefore, the widow was limited to recovering such damages as she suffered by the death of her husband, and it was error to instruct the jury that they could recover damages of every kind to the deceased, Dr. Lee, and all damages of every kind to the party interested in the suit. It was important to have the instruction in this case limited to the damages which were recoverable under the law. If Dr. Lee had suffered between the time of his injury and the time of his death, his widow could, of course, have recovered compensation for such suffering; but under the case of *Belzoni Hardwood Co.* v. *Cinquimani,* where death is instantaneous, no damages are recoverable for injuries to the deceased as such. In the said case (*Belzoni Hardwood Company* v. *Cinquimani*) the writer hereof dissented and expressed his views on what he considered the law to be under the statute; but when the majority of the court speaks it speaks the voice of the state, and it is the duty of the judges of the court, as well as others, to abide by the law announced by the majority of the court. In my personal and private capacity, if I may borrow an expression from Attorney Wemmick in Dickens' "Great

Expectations," I still think the views expressed were sound; but in my official and judicial capacity, I cannot adhere to those views, but must accept the law as announced by the majority of the court. It was, therefore, error for the court to grant this instruction.

It is also complained that it was error to submit to the jury that the railroad company was liable for punitive damages, and that the court erred in admitting evidence of the worth of the defendant railroad company, and in submitting to the jury the question of punitive damages. We think these assignments are well taken. This was not a case for the infliction of punitive damages. Under the full circumstances of the case, when considered in the light of the surroundings at the time and of human nature and human action, we think that there is nothing to show that there was any willful negligence or willful failure to discharge any duty, although there was or may have been a neglect of duty.

When the engineer sees a person upon the track he ordinarily has the right to presume that the person is in possession of his faculties and that he will note the alarm being given, and take due precaution for his own safety, and he is under no duty to slacken the speed of the train where the person on the track is an adult and apparently a normal person, until circumstances arise to bring to his mind, or should bring to his mind, the reflection that the person is not a normal person or has not heard the alarm and will probably not seek his safety in due time.

We think the facts here disclose merely a mistaken judgment; in other words, that the engineer should have reached the conclusion that the person on the track was in a perilous situation somewhat earlier than he did. We do not think a mere mistake of judgment, although it may be negligence, is such character of negligence as will amount to wantonness or willfulness, or warrant the infliction of punitive damages as such. It is one of the infirmities of mortality for men to make mistakes, and to misjudge of situations, but unless they manifest dis-

regard or something that amounts to willfulness or wantonness in disregarding a duty, punitive damages will not be imposed.

We think there is a difference between this case and the *Kelly case,* 126 Miss. 278, 88 So. 707. In the *Kelly case,* the person on the track was a child, a mere boy, deaf and dumb, in the vicinity of the Deaf and Dumb Institute at Jackson, Miss., and the engineer in that case testified that he was on the alert, looking out, and the boy was not in the position where the other witnesses placed him, and that he applied his brakes in emergency and blew his whistle, and did what he could to stop the train; but the other testimony contradicted him upon this proposition, showing that the boy was in a position of peril, and that the engineer was not telling the truth, that if he had looked out he could have seen the boy in the position claimed by the other witnesses, and under circumstances that warranted the engineer in seeing that he was in such position, and that the mere sounding of the signal was not sufficient under the circumstances.

The Kelly case itself was a close case upon this proposition; but taking all the facts disclosed in that case into consideration, and taking into consideration the fact that the engineer's testimony was in direct conflict with other testimony, we concluded that punitive damages were properly submitted in that case.

If in the present case the deceased had been a child of immature years, or something that would have charged the engineer at once with notice of the improbability of the person seeking his safety, it would be different; but we think in the case before us, viewing it from the standpoint of the engineer's testimony and the other testimony in the record, that it was a mere failure to apprehend as quickly as he reasonably should have apprehended the danger to Dr. Lee.

It is also complained that in the argument of the case the attorney for the plaintiff made improper arguments before the jury (this argument was taken down

by a stenographer and inserted in the record), but there was no objection at the time made to the said argument, and under the decisions of the court this is necessary before this court will consider assignments predicated upon arguments. For many years this court has announced the rule that a person desiring to take exception to the argument of counsel in a case must make his objection at the time in open court; in other words, he must give the trial judge a chance. He cannot sit silent and take the benefit of proceeding with the trial and get the benefit, should the verdict be favorable, without objecting, and, on the other hand, get the benefit of a new trial should the case go against him.

It is also stated that the trial judge erred in failing to exercise his judicial function on the motion for a new trial bearing upon this argument, but that the court stated:

"Gentlemen, since this matter will be passed upon by the supreme court, regardless of my idea, it is my idea that the whole matter should be passed on by the supreme court, and the motion will be overruled."

The order of the judge recites that the motion came on for hearing and was considered by the court, and, after being so considered, was overruled.

We assume that the judge acted upon his own honest judgment in the matter, and that in making the statement he did was merely expressing his idea that the case was one which should be ruled upon on appeal. We are bound to assume that the recitals of the judgment are true, and that the judge considered the case as he ought to have done before overruling the motion.

It follows from what we have said that the judgment, in so far as it establishes the liability of the company for the injury, must be affirmed; but for the errors indicated a new trial will be granted for the ascertainment of damages alone, and the improper elements of dam-

ages pointed out will, of course, be eliminated on a new trial.

Reversed, and remanded for a new trial as to damages alone.

*Reversed and remanded.*