531 So.2d 615 (1988)
M & M PIPE AND PRESSURE VESSEL FABRICATORS, INC.
v.
Steven M. ROBERTS, et al., etc.
No. 57944.
Supreme Court of Mississippi.
September 14, 1988.
*617 Fred Mannino, Ronald S. Cochran, Page, Minnino & Peresich, Biloxi, for appellant.
James H. Heidelberg, Bryant, Stennis & Colingo, Pascagoula, for appellees.
Before ROY NOBLE LEE, C.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal of the verdict and judgment of the Circuit Court of Jackson County. Appellant, M & M Pipe and Pressure Vessel Fabricators, was found liable for damages resulting from a four-car accident that claimed the life of Karl Roberts, Jr., the appellees' father. For the reasons discussed below, we remand for a new hearing on the issue of damages only.

I.
On the morning of May 22, 1984, David Buckler, an employee of M & M Pipe, was performing an errand for the company. He was driving the company owned 1978 pickup truck. It was undisputed that at the time of the accident, the brake lights on the truck were not working. Although the tail lights were functional, the red lenses covering the bulbs were broken out on both sides, causing their light to be very dim.
During the course of his errand, it became necessary for Buckler to make a left turn off Industrial Road in Pascagoula. Because there was traffic in the oncoming lane, he came to a full stop before making his turn.
Travelling in the same direction as the M & M truck was a 1980 Plymouth driven by Lindsey Dufek. Dufek's car was already dangerously close to the M & M truck when Dufek suddenly realized that the truck had stopped in order to make a left turn. Dufek applied her brakes, but the pavement was wet from a drizzle and the car went into a skid and began fishtailing. Dufek panicked and clamped her foot tight on the brake with the result that her car continued to skid into the adjacent right-hand lane where Michael O'Connor and his passenger Karl Roberts, Jr. had been driving parallel to her. There was a collision between the O'Connor car and the Dufek car. After impact the O'Connor car spun around into the oncoming lane, where it was struck on the passenger side by a southbound car driven by Wayne Kaminski. As a result of the second collision O'Connor's passenger, Karl Roberts, was apparently killed instantly.
The plaintiffs, minor children of Karl Roberts, sued under the wrongful death statute through their mother and grandfather. Named as defendants were M & M, Buckler, Dufek, Kaminski and O'Connor. O'Connor settled before the trial. The jury returned verdicts for the defendants Wayne Kaminski and David Buckler, but found for the plaintiffs as against Lindsey Dufek and M & M Pipe. Dufek did not appeal, and M & M Pipe is the only defendant involved in this appeal.

*618 LIABILITY

II.
A. M & M Pipe offers three reasons why the trial court erred on the issue of liability. First, M & M argues that the trial court erred in refusing to direct the verdict or grant its motion for judgment notwithstanding the verdict, because any negligence attributable to M & M Pipe was not the proximate cause of the accident.
Mississippi has many cases outlining its doctrine of proximate cause, and the doctrine they embody has been consistently applied over the years. A case cited in the appellant's brief, Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34 (1943), is representative:
Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a nonactionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof. The question is, did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury? 38 Am.Jur. p. 702; Thompson v. Mississippi Cent. R. Co., 175 Miss. 547, 554, 166 So. 353. And so say all the authorities, among which, as a striking illustration, is Bufkin v. Louisville & N.R. Co., 161 Miss. 594, 137 So. 517.
194 Miss. at 639, 640; 13 So.2d at 36.
Accord, Touche Ross & Co. v. Commercial Union Ins. Co., 514 So.2d 315, 323-34 (Miss. 1987); Blackmon v. Payne, 510 So.2d 483, 487 (Miss. 1987); and Saucier v. Walker, 203 So.2d 299, 304 (Miss. 1967).
In cases involving the issue of an intervening cause, this Court has laid particular stress on the concept of "putting in motion". That is, the original actor will not be absolved of liability because of a supervening cause if his negligence put in motion the agency by or through which injuries were inflicted. Capitol Tobacco & Specialty Co. v. Runnels, 221 So.2d 703, 705 (Miss. 1969). See also, e.g., Blackmon v. Payne, supra, 510 So.2d at 487; Robison v. McDowell, 247 So.2d 686, 688 (Miss. 1971); Simmons v. Amerada Hess Corp., 619 F.2d 440, 441 (5th Cir.1980).
And "if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and injury." Ross v. Louisville and Nashville RR., 178 Miss. 69, 84, 172 So. 752, 755 (1937). See also, e.g., Touche Ross v. Commercial Union, supra, 514 So.2d at 323; Blackmon v. Payne, supra, 510 So.2d at 487; McCorkle v. United Gas Pipe Line Co., 253 Miss. 169, 188, 175 So.2d 480, 489 (1965). In determining whether the actor's negligence was the proximate cause of the injury, it is not necessary that the actor should have foreseen the particular injury that happened; it is enough that he could have foreseen that his conduct could cause some injury. See, e.g., Nobles v. Unruh, 198 So.2d 245, 248 (Miss. 1967); Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 332, 54 So. 890, 891 (1911).
Dufek's negligence, driving at too high a speed on a wet road, with worn tires and paying insufficient attention to traffic ahead, is certainly a foreseeable act of negligence. Indeed, it is precisely the type of negligence careful drivers of other vehicles must guard against. Under our existing case law Dufek's negligence was therefore not an intervening cause sufficient to cut off M & M's liability.
This assignment of error is denied.
B. M & M Pipe next argues that the trial court erred in granting to the appellees what amounted to a peremptory instruction. Jury Instruction P-13A reads:
The Court instructs the jury that it is undisputed that on May 22, 1984, the *619 1978 Dodge Pick-Up Truck owned by the Defendant, M & M Pipe and Pressure Vessel Fabricators, and operated by the Defendant, David Buckler, was equipped with defective and broken rear red tail lights and defective and non-working brake lights. Therefore, the Court instructs the jury that the defendant, M & M Pipe and Pressure Vessel Fabricators, was negligent as a matter of law.
The Court instructs the jury that if you find from a preponderance of the evidence in this case that such negligence of the Defendant, M & M Pipe and Pressure Vessel Fabricators, was a proximate contributing cause or the sole proximate cause of the death of Karl Louis Roberts, Jr., then your verdict shall be for the Plaintiffs against the Defendant, M & M Pipe and Pressure Vessel Fabricators.
The appellant argues that by pronouncing him negligent per se, the court was in effect giving a peremptory instruction to the jury to find for the plaintiffs as to M & M's liability. However, this characterization fails to take into consideration the second half of the instruction, which informs the jury that they must also find that M & M's negligence was the proximate cause of the injuries. Had the jury not found that M & M's negligence was a proximate cause, it could, of course, have excused M & M from liability in spite of its negligence.
In the alternative the appellant argues that the instruction was an incorrect statement of the law, in that there was no statutory basis for holding M & M negligent per se. The two pertinent statutes provide:
§ 63-7-25. Visibility of clearance, side-marker, and tail lamps.
Clearance, side-marker, and tail lamps shall, when lighted, be capable of being seen at a distance of five hundred feet under normal atmospheric conditions during the time when lights are required. The light from front clearance lamps shall be visible to the front, from sidemarker lamps to the side, and from rear clearance and tail lamps to the rear, of the motor vehicle.
§ 63-7-27. Performance and visibility of stop lights; incorporation with tail lamps.
Stop lights shall be actuated upon application of the service (foot) brake and shall be capable of being seen and distinguished from a distance of one hundred feet to the rear of the vehicle in normal daylight. Stop lights shall not project a glaring or dazzling light.
A stop light may be incorporated with a tail lamp.
Mississippi Code Annotated (1972).
Everyone admitted that the brake lights on the M & M truck were not working. Therefore, M & M was in fact, negligent per se as to those brake lights, and the instruction correctly informed the jury as to that fact.
The difficulty arises as to the broken tail lights. The evidence indicated that the red plastic covering both tail lights was broken, although it was undisputed that both bulbs were burning. The quality and character of the light from these tail lights, the distance from which they were visible, were matters in controversy. Therefore, whether or not M & M was negligent as to the broken tail lights should have been a matter for the jury and the trial court erred by taking this issue from the jury through this instruction.
Such errors, however, are not necessarily reversible. Since the appeal in this trial was perfected before January 1, 1988, when the new Mississippi Supreme Court Rules came into effect, the issue is controlled by Rule 11 of the old Rules which states:
No judgment shall be reversed on the ground of misdirection to the jury ... unless it shall affirmatively appear, from the whole record, such judgment has resulted in a miscarriage of justice.
On this record it does not appear that the error resulted in a miscarriage of justice. It must be remembered that the accident occurred at 8:00 in the morning  a morning on which visibility was good. Since the *620 accident occurred under circumstances in which an automobile would not normally have its tail lights turned on at all, there is no basis for entertaining the idea that a reasonable jury could find the broken tail lights contributed materially to the accident. The error in the instruction was harmless.
C. Last on the issue of liability, M & M Pipe asserts that the trial court erred by allowing Officer Sheila Jenkins to render expert opinion testimony. Pursuant to Rule 26 (b)(4)(A)(i) of the Mississippi Rules of Civil Procedure, the defendants asked the plaintiffs to supply the identity of any expert witnesses they were to call, and the substance of their testimony. The plaintiff's initial response was that they did not plan to call any experts, but would notify the defendants if there were any change. In August 1985, having heard a report that they planned to call an economist, the defendants filed a motion to compel discovery and for sanctions. The plaintiffs' supplemental response on the 29th of August named Dr. Pike, an economist, as the expert witness who was to testify about Roberts' earning capacity. They enclosed his report.
On February 13, 1986, the court entered a pre-trial order requiring the parties to disclose the names of witnesses, their status, whether fact or expert, and the subject matter of their anticipated testimony. On February 21, the defendants received notice that Officer Jenkins of the Pascagoula police department would testify as an expert witness and give her opinion regarding the cause of Roberts' death and the specific acts of negligence of the defendants. The trial began on Monday, February 24, 1986.
Much earlier, on November 7, 1984, Officer Jenkins was included in a list of fact or occurrence witnesses as part of the plaintiffs' Answers to Interrogatories. On November 29, 1984, the defendants deposed Officer Jenkins. During that deposition, Jenkins testified generally about the accident scene and particularly about her investigation which uncovered, among other things, the fact that the M & M Pipe truck's brake lights were not working. She also gave her opinion as to the initial point of impact.
Prior to accepting Jenkins' testimony at trial, the court ruled that she could testify as a fact witness and that whether she could testify as an expert would depend on proper qualification. Officer Jenkins was never qualified or tendered as an expert witness. When, during direct examination, the issue of fault arose, the jury was excused and Jenkins was voir dired. The trial court ruled that Officer Jenkins would not be allowed to voice her opinion concerning who was at fault in the accident. However, the court did determine that, if an adequate factual basis was established, Jenkins could give her opinion concerning contributing factors. Over objection, Jenkins testified that, in her opinion, the defective brake lights contributed to the accident.
When discovery rules are violated, Rule 37(b)(2)(B), M.R.C.P., authorizes the trial court to issue "an order ... prohibiting [the defaulting party] from introducing designated matters in evidence." Whether such a sanction should be imposed is committed to the sound discretion of the trial court. See, Conservatorship of Stevens v. Patrick, 523 So.2d 319, 321 (Miss. 1988).
While the plaintiffs may have violated Rule 26(b)(4)(A)(i), M.R.C.P., due to their failure to timely supplement their answers to interrogatories concerning expert witnesses, the violation amounted to nothing. In spite of the trial court's ruling that Officer Jenkins might be allowed to testify as an expert, she did not. She was well known by the defendants as a fact witness; therefore, there was no surprise. As a lay witness, and based on her personal observations, Jenkins opined that the broken brake lights contributed to the accident. Rule 701 of the Mississippi Rules of Evidence authorizes such opinion testimony by lay witnesses. It does not take an expert to know that if brake lights are not functioning, an accident may occur. Who among us has not been forced to react quickly after belatedly discovering that the brake lights on the car in front of us do not work? Based on the fact that the defendants *621 knew through discovery that Officer Jenkins was a fact witness and based on the type of opinion testimony she gave, the trial court committed no error.

DAMAGES

III.
M & M Pipe alleges that the trial court erred in instructing the jury on the elements of "loss of society and companionship" and "pain and suffering". M & M Pipe also contends that the court erred in prohibiting evidence, comments or arguments regarding the fact that at the time of his death, Karl Roberts was not supporting his children, the plaintiffs. Over defense objections, the court granted Jury Instruction P-21. This instruction states in part:
In determining the amount of such damages, you may consider such of the following elements of damages as are shown by a preponderance of the evidence:
(1) The loss of society and companionship of Karl Louis Roberts, Jr. to his two children Steven M. Roberts and Chisolm C. Roberts;
.....
(3) Pain and suffering endured by Karl Louis Roberts prior to his death.
The well-established rule in Mississippi is that a jury instruction will not be granted unless there is some basis for it in the evidence. E.g., Detroit Marine Engineering v. McRee, 510 So.2d 462, 465 (Miss. 1987); Lewis Grocer Co. v. Williamson, 436 So.2d 1378, 1380 (Miss. 1983); Johnson v. Foster, 202 So.2d 520, 526 (Miss. 1967).
Where death in an accident is instantaneous, there can be no recovery for pain and suffering in a wrongful death action. E.g., Yazoo and Miss. Valley RR Co. v. Lee, 148 Miss. 809, 823, 114 So. 866, 869 (1928). The plaintiff has the burden of proving survival and consciousness after the accident. Avery v. Collins, 171 Miss. 636, 647, 157 So. 695, 698 (1934), and this burden is not sustained unless there is "substantial proof" of consciousness after the impact. Standard Oil Co. v. Crane, 199 Miss. 69, 82, 23 So.2d 297, 300 (1945).
In the present case, no one testified that Karl Roberts was alive or conscious at any time after the collision. David Buckler went to the O'Connor car immediately after the wreck, removed Roberts from the car and testified "I thought he was dead at that point, but I wasn't sure." O'Connor, the driver of the car in which Roberts rode, was asked if he heard Roberts say anything and he answered,
A. Uh, at one point when Miss Dufek tapped us there and he realized we were getting ready to go into . .. some problem, ... he did, he cussed a little bit. He knew we had a problem coming here.
At most, this shows that there was a moment when Roberts anticipated the accident. However, the appellee cites no case standing for the proposition that momentary anxiety caused by an anticipated accident can support damages for pain and suffering under the wrongful death statute.
In short, there was no "substantial proof" that Karl Roberts survived the moment of impact and therefore the trial court erred in instructing the jury on the point.
Jury Instruction P-21 also informed the jury that it could consider the loss of society and companionship of Roberts to his two children in computing the amount of damages, if any. In his five-year marriage to the present Marjorie Jean Leimbach, the decedent Karl Roberts fathered two children, the plaintiffs in the present action. The marriage was dissolved in 1981; the two children now reside in East Ridge, TN, with their mother and step-father Dean Leimbach. Their stepfather supports them. In answers to interrogatories from Kaminski and Buckler, the plaintiffs' attorneys admitted that Roberts did not substantially support his children, and "did not contribute to the support of his children on a regular basis" although they did tell Kaminski that he did on occasions provide money and other gifts for his children. Plaintiffs admitted to Buckler that at one point contempt proceedings were filed against Roberts because of his failure to *622 pay the child support mandated by the court.
At trial, the only testimony before the jury on the matter was from O'Connor, the driver of the car in which Roberts died. O'Connor stated that his sister, Cindy Williams, and Roberts had been living together for three or four years. O'Connor also told the jury that Karl Roberts was supporting Cindy's two children by a previous marriage, even though he had never seen these children. As to Roberts' own children, O'Connor testified that he knew of no visits to or from the children, "I do know he spoke about them a lot and cared for them very much." There was no evidence of any kind in the record concerning written communications between parent and child.
The basis for this assignment of error is that even after Roberts' closeness to his children became an issue, the trial court refused to allow M & M Pipe to introduce any evidence tending to show what the plaintiffs had already admitted in discovery  the fact that even though Karl Roberts was supporting Cindy Williams' two children, he was not supporting his own children. The trial judge excluded this evidence because he considered it in the context of its impact on the present cash value of Roberts' life. He reasoned that Roberts had a legal obligation to support his children and the children should not be deprived of their entitlement even if Roberts had failed to discharge that duty in the past.
This reasoning was well taken as to the present cash value issue, but such evidence has a bearing on the issue of Roberts' affection for and relations with his children. Had the jury been allowed to hear that Roberts had chosen to support two other children instead of his own natural children, it undoubtedly would have affected their evaluation of O'Connor's testimony that "he cared very deeply" for the children.
In McGowan v. Est. of Wright, 524 So.2d 308 (Miss. 1988), a widow filed a wrongful death action against the estate of her husband's mistress, who was driving the car when both of them were killed in an accident. The court noted that McGowan and his wife, though never divorced, had been separated since 1946. Husband and wife saw each other only four times during that long period; each of these times, it was the wife who visited the husband. Except for a single Christmas card, there was no written communication between the two during this entire period.
This Court took note of the fact that such evidence mitigated strongly against any finding of damages for the loss of society and companionship. It laid great stress on the fact that "the jury had all the facts before it [and] obviously concluded that appellant had no loss of society and companionship and therefore suffered no damage."
Similarly, in the present case, there is reason to believe that if the jury "had all the facts before it," as to the relationship or lack thereof, between Karl Roberts and his children, they might have made a similar finding. The trial judge's ruling, disallowing evidence of the lack of child support removed a significant body of highly relevant evidence from the jury's consideration. The trial judge erred in excluding this evidence. Any problem concerning its relevance to particular issues such as present cash value should have been handled through appropriately drafted instructions, rather than a total exclusion of the evidence.
These two trial errors require that we reverse and remand for a new hearing only on the issue of damages. Because of our disposition of the case we need not address M & M Pipe's last assignment of error.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR A NEW HEARING ON THE ISSUE OF DAMAGES.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.