# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-02209-SCT

*CHERYL ROBLEY, PH.D.*

*v.*

*BLUE CROSS/BLUE SHIELD OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2003 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| ATTORNEY FOR APPELLANT: | PAUL J. DELCAMBRE, Jr. |
| ATTORNEYS FOR APPELLEE: | JAMES ALTUS McCULLOUGH, II |
| | CHERI D. GREEN |
| | WHITNEY MORGAN STONE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART- 08/10/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal is before this Court on writ of certiorari from the Court of Appeals'
reversal of the Harrison County Circuit Court. After the close of Dr. Cheryl Robley's case in

chief, the trial court granted a directed verdict in favor of Blue Cross Blue Shield of Mississippi (Blue Cross) pursuant to Miss. R. Civ. P. 50(a). The Court of Appeals reversed the trial court stating that Blue Cross, via contract, created a fiduciary relationship with Cheryl Robley and therefore, whether Blue Cross breached its duty of confidentiality was a jury question. In its petition for certiorari to this Court, Blue Cross assigns as error the Court of Appeals' holdings that: Robley's insurance policy with Blue Cross created a fiduciary relationship; no claim for public disclosure could stand under the present facts; and Robley's injuries were unforeseeable as a matter of law. We hold that the contract did not create a fiduciary relationship and therefore reverse the Court of Appeals and affirm the trial court on that issue. However, we agree that the trial judge erred in granting a directed verdict on the issues of breach of confidentiality and negligent infliction of emotional distress, and we reverse and remand for a jury's determination of those issues.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Under a group health insurance contract sponsored by her husband's employer, Robley and their daughter Kelly had dependent health care coverage. Robley had been a clinical psychologist in Tennessee prior to moving to Mississippi. During the 1980's Robley began experiencing severe migraine headaches, and her efforts to treat them failed. The headaches were persistent and disabling and ultimately forced her to close her practice. As a part of her treatment for the headaches, Robley was prescribed narcotic medication by her physicians. Blue Cross, as Robley's insurer, was privy to her medical records, including her prescriptions for narcotic medications.

2

¶3. In February 1997, Kelly was hospitalized several times at Gulf Coast Community Hospital and its affiliated Wound Care Center in Biloxi for treatment for severe deep abscesses which required continual care after her release, including attending to and re-wrapping their dressings. Because of Robley's history with migraines and her husband's concerns that he could not properly care for Kelly's wounds, the staff of the Wound Care Center sought approval from Blue Cross for in-home visits by a home healthcare nurse. Approval was sought because home healthcare was not covered by the group policy and would require a policy extension.

¶4. Paula Mason, R.N., an employee of the Wound Care Center called Blue Cross seeking approval, and spoke with Sandra McFarland, R.N., who worked for Blue Cross and was the case manager assigned to Robley's plan. The conversation between McFarland and Mason became the subject matter of the controversy. According to Mason, McFarland referred to Robley as a "drug seeker", a derogatory term for someone who abuses prescription narcotic medication despite the fact that they do not need it.[1] Upon conclusion of the call, Mason relayed McFarland's comments to Robley's husband, within hearing distance of Robley and Kelly. Robley claims that, upon overhearing McFarland's comments, she entered a psychotic state which aggravated her migraines and left her bedridden for several days. Further, since the incident she has frequently become enraged, violent and suffered bouts of crying over minor events that previously would not have affected her.

---

[1] McFarland and Blue Cross deny that the term "drug seeker" was ever used.

¶5. On January 29, 1999, Robley filed suit against Blue Cross in the Harrison County Circuit Court. Her complaint sought damages for both intentional and negligent infliction of emotional distress, as well as breach of confidentiality. Preceding the listing of these specific counts was the statement "[b]ecause of the nature of these [medical] records, Blue Cross/Blue Shield had a fiduciary or other duty to maintain the confidentiality of these records."

¶6. Blue Cross denied the allegations, asserting that it acted reasonably and in good faith with respect to its obligations under the policy. Following discovery, Blue Cross filed a motion for partial summary judgment as to the claim of intentional infliction of emotional distress which was granted. Soon thereafter Blue Cross filed a second motion for summary judgment in regard to the remaining claims, which the trial court denied.

¶7. The case went to trial, and after Robley presented her evidence, Blue Cross moved for a directed verdict. Before hearing argument on the motion, the trial court suggested that, if the parties agreed, he would take the motion under advisement and then let the defense present its video of McFarland's deposition, before excusing the jury for the day. There was no objection, the video was shown, and the jury was then dismissed for the evening. The trial court's very first statement, before hearing argument on the motion, was "now that I have heard the testimony of the defense witness, it's very difficult to separate it even in my own mind." After an extensive hearing on the motion for directed verdict, the trial court stated:

> In my view, no reasonable juror, giving every benefit of every inference that could be raised, could return a verdict and award damages to this lady under the facts that are here. Even if they could jump the issue of liability, breach of the duty to keep confidential this information, even if they could agree on that,

4

legally they could not find any damages because there is [sic] none. And we all know you can't have a negligence without injury.

¶8.     When counsel for Robley asked the trial court whether "the basis for that ruling was the lack of foreseeability or simply the lack of evidence of the causal connection," the trial court chose not to answer, saying "I'm not going to isolate the reason for granting of the directed verdict at this time." After further discussion, the trial court stated that it directed a verdict in favor of the defendant because "there was no testimony that would support an award of damages which proximately resulted from this so-called breach of confidentiality. And without damages, there's nothing for the jury to decide, even if they found there was a breach." The directed verdict was then granted.

## PROCEEDINGS IN THE COURT OF APPEALS

¶9.     On appeal, the Court of Appeals reversed the trial court, finding a fiduciary relationship existed between Blue Cross and Robley which required Blue Cross to evince a high degree of care as to the dissemination of her medical records. *Robley v. Blue Cross/Blue Shield of Miss.*, 2005 WL 1500300 at ¶ 12 (Miss. Ct. App. 2005). Additionally, finding the record below was unclear with regard to whether Blue Cross lived up to that standard, the Court of Appeals remanded for a jury to make that determination. *Id.* at ¶ 13. Finally, the Court of Appeals held that, taken in the light most favorable to Robley, sufficient evidence existed to submit to a jury the causal connection between McFarland's comments and Robley's injuries. *Id*. at ¶ 14.

5

## ANALYSIS

### I.  FIDUCIARY DUTY

¶10.  A fiduciary relationship is a broad term embracing technical fiduciary relations and informal relations which exist wherever one person trusts in or relies upon another.  *Burgess v. Bankplus*, 830 So. 2d 1223, 1227 (Miss. 2002); *Lowery v. Guar. Bank & Trust Co.,* 529 So. 2d 79, 83 (Miss. 1991).  Traditional fiduciary relationships are found in cases of trustee and beneficiary, partners, principal and agents, guardian and ward, managing directors and corporation.  *Carter Equip. Co. v. John Deere Indus. Equip. Co.*, 681 F.2d 386, 390 (5th Cir. 1982).  However, our law applies a broad brush to this doctrine and does not preclude a jury's finding of a fiduciary relationship in other situations.  *Id*.

¶11.  Ordinarily this Court does not impose fiduciary duties upon parties to a contractual agreement, but in some rare cases the terms of the contract itself create a fiduciary relationship.  *Id.*  However, this is only in cases where the contract relationship creates a justifiable special trust and confidence in the parties so that the first party relaxes the care and vigilance normally exercised in entering into a transaction with a stranger.  *Lowery*, 592 So. 2d at 83.

¶12.  Although every contractual agreement does not give rise to a fiduciary relationship, in Mississippi such a relationship may exist under the following circumstances:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the

6

parties repose trust in one another; and (4) where one party has dominion or control over the other.

*United Nursing Assocs., PLLC v. Phillips*, 842 So. 2d at 1270, 1274 (Miss. 2003).  See

*Carter*, 681 F. 2d at 391.  The Court of Appeals found that the language of the policy, alone,

created a fiduciary relationship.  The policy states in pertinent parts:

> Each member receiving care under the Benefit Plan authorizes and directs any Provider to furnish to Company, at any time upon its request, all information, records, copies of records or testimony relating to attendance, diagnosis, examination, or treatment.  Such authorization and compliance therewith by each Provider affected will be a condition precedent to rights to Benefits to each Member hereunder, and no Benefits will be provided in any case where such authorization is not given full effect.  Company will utilize the information described in this paragraph for internal administration of the benefit Plan, medical analysis, coordination of benefit provisions with other plans, subrogation of claims, or in the reviewing of a disputed claim.  Additionally, Company will hold such information, records, or copies of records, as confidential except where in its discretion the same should be disclosed.

> Company, as a part of its utilization management activities, may disclose information about a Member's utilization to a treating physician or a dispensing pharmacy.

¶13.    This policy creates an arm's-length relationship where medical records will be kept

confidential except where, in the discretion of the company, the same should be disclosed.

There is no indication from the policy or from the parties' course of dealings that they acted

in any way other than for their own best interests.  The relationship was not conducted for

mutual profit and Robley had not, nor should she have, reposed any special degree of trust or

confidence in Blue Cross.

¶14.    This Court has refused, in a similar case, to recognize the existence of a fiduciary

relationship where the parties were involved in little more than an arm's-length business

7

transaction. *Phillips*, 842 So. 2d at 1275 (citing *Merchants & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 404 (Miss. 1997)); *see also **Szumigala v. Nationwide Mut. Ins. Co.***, 853 F.2d 274, 280 n. 7 (5th Cir. 1988) (finding no fiduciary duty under Mississippi law between an insured and insurer in a first-party insurance contract). Although one does not typically enter into a contract with another person unless he or she has a degree of trust or confidence in that person, without more, such a transaction amounts to merely a business relationship and not a fiduciary relationship. *AmSouth Bank*, 838 So. 2d at 216. The severity of the burdens and penalties integral to a fiduciary relationship should not apply to ordinary insurance policy transactions. *Id.*

¶15. That being said, there is nothing in the policy itself and no evidence presented to this Court which indicates a fiduciary relationship. The Court of Appeals' decision misread this Court's precedent and applied language to the policy which did not exist. As a result we reverse the Court of Appeals on this issue, and reinstate the ruling of the trial court that no fiduciary relationship existed under the policy between Robley and Blue Cross.

## II.    BREACH OF CONFIDENTIALITY AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

¶16. As a question of law, we review the grant or denial of a motion for a directed verdict de novo. *Entergy Miss., Inc. v. Bolden*, 854 So. 2d 1051, 1054 (Miss. 2003). In reviewing a motion for a directed verdict this Court must decide whether the facts presented, together with any reasonable inferences, considered in the light most favorable to the nonmoving party, point

8

so overwhelmingly in favor of the movant that reasonable jurors could not have returned a verdict for the plaintiff. *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996).

¶17. The pivotal question in the present case is whether the alleged disclosure of Robley's medical history occurred and, if so, whether such disclosure was unnecessary and unreasonable. We remain mindful of the absolute sensitivity of confidential medical information possessed by insurance companies, and the importance of protecting that information from improper disclosure. An insurance company's dissemination of an insured's medical records must be governed by the strict necessities of the situation. However, there are situations where limited disclosure is appropriate under the terms of the policy.

¶18. As written, the policy allows Blue Cross, within its discretion, to release its patient's medical records to the patient's physician. The wording of the policy indicates clearly and unambiguously the terms of the agreement. This Court must give effect to the plain meaning of clear and unambiguous language. *Jackson v. Daley*, 739 So. 2d 1031, 1041 (Miss. 1999). Robley argues that her medical records should not have been released, for two reasons. First, her records were not necessary to further Kelly's treatment. Second, that the records were released to Kelly's physicians and not Robley's physicians thereby violating confidentiality.

¶19. Although the language of the policy seems to give broad authority, Blue Cross does not have unfettered discretion to disseminate Robley's medical records. There still remains a dispute between McFarland and Mason as to whether the term "drug seeker" was used. There was evidence presented at trial by both which contradicts the other's story. This conflict should have been decided by the jury rather than the judge. From our review of the record, and

9

giving due deference to the nonmoving party, reasonable jurors can disagree as to which party, McFarland or Mason, was telling the truth. This evidence brings into question whether there was a breach of confidentiality.

¶20. From the trial judge's bench ruling, it appears the basis of his decision was Robley's failure to present evidence of damages sufficient to prove a case of negligence. Thus, as a matter of law, the trial judge found that such evidence did not exist. With this conclusion we cannot agree. Robley's expert medical witness, Dr. Richard Strub,[2] testified to a reasonable degree of medical certainty that this disclosure could have caused Robley increased levels of stress and anxiety. Such an increase, in his opinion, "aggravated" her preexisting migraine headache condition. Dr. Strub described this as meaning "[Robley] would have more migraines during those times when she was thinking about [the disclosure] or worrying about it or dealing with it." Further, that in his own observations, following the disclosure, her condition worsened and that "she was having quite a bit of trouble." This evidence brings into question causation and damages.

¶21. While it is clear that the injuries alleged by Robley are unusual, their unique nature does not defeat her action. It is well established in this State, that in order for one to be liable in a negligence action the test is not whether they were able to foresee the particular type of injury suffered, but whether they could foresee an injury would result from their actions. *M & M*

_____

[2]Dr. Strub, a board certified neurologist who practices at the Oschner Clinic, in New Orleans, Louisiana, has treated Robley since 1993. His testimony was admitted via video deposition.

10

*Pipe & Pressure Vessel Fabrications, Inc. v. Roberts*, 531 So. 2d 615, 618 (Miss. 1988). One could foresee an injury might arise from the unnecessary and unreasonable disclosure of confidential medical records. Therefore, the uniqueness of the injuries claimed by Robley will not defeat her claim.

¶22. While Blue Cross had the right to disseminate Robley's medical records under certain conditions, the means of doing so must be both necessary and reasonable. In this case it is not clear, as a matter of law, that Blue Cross acted appropriately in disclosing Robley's medical records. We conclude that reasonable jurors could disagree. Blue Cross's disclosure must remain tailored to the related medical purpose. As a result, we hold that the trial judge erred in granting Blue Cross's Rule 50(a) motion.

## CONCLUSION

¶23. We hold that the trial court was correct in granting a directed verdict as to Robley's fiduciary duty claim. However, the issues of negligent infliction of emotional distress and breach of confidentiality remain jury questions. Therefore, we affirm the judgment of the Court of Appeals in part and reverse it in part, affirm the trial court's judgment of no fiduciary duty, reverse the trial court's judgment in all other respects, and remand this case for further proceedings in the trial court consistent with this opinion.

¶24. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ J., CONCURS IN RESULT ONLY. EASLEY, J., CONCURS IN PART.**

11

**GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**