353 So.2d 769 (1978)
GEORGIA-PACIFIC CORPORATION and Robert Levins
v.
Dick BLAKENEY.
No. 50141.
Supreme Court of Mississippi.
January 4, 1978.
*771 L.D. Pittman, Raleigh, for appellants.
E. Howard Eaton, Taylorsville, Tullos & Tullos, Eugene C. Tullos, Raleigh, for appellee.
Before SMITH, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
The Circuit Court of Smith County entered judgment in favor of Dick Blakeney against Georgia-Pacific Corporation and Robert Levins in the sum of forty-five thousand dollars ($45,000) and Georgia-Pacific and Levins appeal.
Appellants assign the following errors in the trial below:
(1) The court erred in overruling appellant's motion to transfer the case to the chancery court.
(2) The court erred in not directing a verdict for appellants.
(3) The verdict of the jury was contrary to the overwhelming weight of the evidence and was so excessive as to evince bias, passion and prejudice on the part of the jury.
(4) The trial court erred in granting Instructions Nos. 1, 3, 12, and 13 over the objection of appellants.
Blakeney was a logging contractor for Georgia-Pacific Corporation. On July 23, 1974, he executed a promissory note and security agreement to Smith County Bank securing the purchase of a CD5 Tree Farmer Log Skidder. The note totaled thirty-one thousand eight hundred five dollars twenty-eight cents ($31,805.28) and was repayable in thirty-six (36) monthly installments of eight hundred eighty-three dollars forty-eight cents ($883.48) beginning September 1, 1974. Georgia-Pacific guaranteed the note and agreed with Blakeney that the monthly installments would be withheld from his weekly checks on a per thousand board feet of logs hauled each week. The money would be deposited in a checking account by Georgia-Pacific in the Smith County Bank, which account was entitled "Dick Blakeney Loan Account," and the proceeds would be credited to the monthly payments by the bank as they became due.
In October, 1974, the president of Smith County Bank notified Blakeney that his note was delinquent. Robert Levins, Forestry Supervisor of Georgia-Pacific, informed Blakeney that, because of a bookkeeping error, payments had not been withheld. Georgia-Pacific paid the three (3) installments due September 1, October 1 and November 1, 1974 on the 24th day of October, 1974.
During the month of April, 1975, with the permission of Georgia-Pacific, appellee logged a tract of land other than that on which he had a logging contract, because of extreme weather conditions. His equipment was on the job and he was working with another contractor who had similar equipment and a similar contract with Georgia-Pacific. On April 13, 1975, appellee's wife became ill and he remained with his wife at the hospital during the last week in April. The skidder was working on the job with the other contractor. Blakeney last saw his skidder on April 25, 1975, at which time, according to his testimony, it was in good condition, except for a low tire. On April 30, 1975, Robert Levins took possession of the skidder and placed it under a shed at Georgia-Pacific's plant in Taylorsville, Mississippi. Appellee discovered on May 2, 1975, that Georgia-Pacific had taken his skidder and on May 26, 1975, he demanded return of the skidder, which appellants declined to do. On June 6, 1975, Georgia-Pacific paid the Smith County Bank the full amount of the indebtedness guaranteed on the note and security agreement and received an assignment from the Smith County Bank of said instruments.

I.
Did the court err in denying appellant's motion to transfer the case to the chancery court?
*772 Appellants contend that Blakeney was in default on the first three monthly payments which appellants failed to withhold and pay to the bank for September, October and November, 1974. Blakeney testified that the three installments were added on the end of the indebtedness and that he was not in arrears on same. The Smith County Bank did not consider the account to be delinquent, according to its president, and did not notify Georgia-Pacific of the delinquency until May 26, 1975, at which time it called upon Georgia-Pacific to pay the note.
Appellants claim that the skidder was in a bad state of repair, was exposed to the weather and that one reason for taking possession of same was to protect the security, while Blakeney claims that the skidder was in a good state of repair and that it was on the job site when taken by appellants. The suit was instituted in the circuit court on the theory of conversion and properly so. If there had been no issue as to default, either from failure to make installment payments or failure to preserve the security, there would be a question of law as to whether or not the circuit court should have transferred to the chancery court. The facts were in dispute, and these were proper issues to be determined by the jury.
A declaration setting forth a cause of action based on the tort theory of conversion is an action at law, and is to be pursued in the circuit rather than chancery courts. See 18 Am.Jur.2d Conversion § 135, at 239 (1965):
"Although in some respects an action for conversion has been regarded as partaking of the nature of a suit in equity, or as an action in which it is competent to investigate and determine the equity of the case, it has been stated to be strictly a legal action. In any event, a mere equitable interest in personal property is frequently held not to constitute a sufficient basis for the maintenance of the action."
See also 89 C.J.S. Trover and Conversion § 89, at 584 (1955):
"Since the action of trover is a creature of the common law and involves the right to trial by jury, it comes under the jurisdiction of the courts of law. Although property of which conversion is alleged is in the custody of a chancery court, an action for its conversion may be brought in a law court, since it does not affect the possession of the property, or interfere with its custody."
The trial judge correctly overruled the motion to transfer said cause to the chancery court.

II.
Did the court err in declining to direct a verdict in favor of appellants?
The rule, in determining whether a motion for directed verdict should be granted, requires the trial judge to consider the evidence on behalf of the party against whom a directed verdict is requested, along with all reasonable inferences, in the light most favorable to said party, disregard any evidence of the other party in conflict therewith, and, if the evidence and reasonable inferences to be drawn therefrom would support a verdict for such party, the motion for directed verdict should be denied. (Here the motion for directed verdict actually was a request for peremptory instruction). Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975); White v. Thomason, 310 So.2d 914 (Miss. 1975); Williams v. Weeks, 268 So.2d 340 (Miss. 1972); Clark v. Luther McGill, Inc., 240 Miss. 509, 127 So.2d 858 (1961); Sumrall Motor Co. v. Creel, 158 Miss. 262, 130 So. 151 (1930).
The evidence for appellants and appellee conflicted sharply in the present case and, applying the foregoing rule, we are of the opinion that a jury question was presented, and the trial judge correctly overruled the motion for a directed verdict.

III.
Was the verdict of the jury contrary to the overwhelming weight of the evidence and was it so excessive as to evince bias, passion and prejudice?
The appellee obtained instructions which informed the jury that it might return a *773 verdict for actual damages and for punitive damages. Evidence of actual damages submitted in the instructions were: (1) humiliation, embarrassment and mental anguish, (2) loss of earnings, (3) loss of personal property which the defendants took from the plaintiff and failed to return, (4) loss of credit standing in the community. As to those elements, the proof for appellee was speculative and sketchy, and questions and answers were similar to the following:
"Q. What effect, if any, did the taking of this skidder have upon your logging operation?
A. It put me out of business.
Q. What, if anything, happened to the bulldozer?
A. I lost it.
Q. How did you lose it?
A. I don't have no way of paying for it.
* * * * * *
Q. What effect, if any did the taking of this skidder have upon your financial condition?
A. It put me in bad trouble  debt.
Q. What happened when you didn't pay the bills?
A. I had bill collectors day and night.
Q. What effect, if anything, did this have upon you?
A. It worried me, naturally. It made it pretty hard to live around the house.
Q. What effect, if any, did it have upon your ability to sleep?
A. A lot.
Q. And by that what does it mean, Mr. Blakeney?
A. Well, if you are worried and people are coming to your house all night during  all time during the night wanting money, well, you can't sleep, can you? If you don't have the money to pay them.
Q. What effect, if any, did this have on your health?
A. Well, I faint a good bit."
In conversion, the value of the personal property at the time of the alleged seizure must be shown to prove damages from the loss or deprivation of the property. Although the amount of the note was admitted in evidence, and the counter-claim charged that the value of the skidder was twenty-six thousand dollars ($26,000), the proof is silent as to what the value of the skidder was at the time appellants took possession of same. The jury was not properly instructed as to how it might arrive at a verdict for actual damages, and had no guidelines to follow in fixing damages. The court granted a punitive damage instruction, but the form of verdict did not separate actual damages from punitive damages, and the verdict was a general verdict assessing damages at forty-five thousand dollars ($45,000). There is no way for this Court to know what amount of the verdict was actual damages, if any, or punitive damages, if any. The jury may not have allowed punitive damages and may have fixed the entire damages as actual damages, which is not sustained by the proof. We are of the opinion, from the state of the record, the verdict of the jury is contrary to the overwhelming weight of the evidence and that the case must be reversed and remanded for a new trial. Wayne County Mfg. v. Shirley, 15 So.2d 624 (Miss. 1943); Beard v. Williams, 172 Miss. 880, 161 So. 750 (1935).

IV.
Did the court err in granting Instruction Nos. 1, 3, 12 and 13 requested by appellee?
Instruction No. 1 advised the jury that taking possession of another's property without authority of law is termed conversion. Appellants contend that the question of default was not included in the instruction and that it becomes tantamount to a peremptory instruction. They likewise contend that Instruction No. 13 is a peremptory instruction since it used the words "took the skidder without the consent or permission of Dick Blakeney or without authority of law." On a retrial of the case, the issue of default should be included in the instructions and the jury should be advised on that question in specific terms.
*774 Instruction No. 3 covered actual damages and Instruction No. 12 covered punitive damages. While we have no way of knowing what the proof may show in a second trial of the case, the parties should make certain that the instructions follow the evidence and are supported by the evidence.
For the reasons stated, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and BOWLING, JJ., concur.