Tracy L. Williamson filed suit against The Lewis Grocer Company and Mrs. B.R. Noel in the Circuit Court of Lamar County, Honorable R.I. Prichard, III, presiding, for personal injuries sustained from a fall. At the conclusion of all the evidence, a nonsuit was taken as to Mrs. Noel, the case was submitted to the jury, and a verdict of $75,000 was returned in favor of Williamson. The Lewis Grocer Company has appealed here and assigns eight errors in the trial below.
 I.
Five of the assigned errors may be consolidated into one question, viz, that the court erred in declining to grant a directed verdict in favor of the appellant, The Lewis Grocer Company, at the conclusion of all the evidence.
The evidence favorable to appellee indicates that, on October 16, 1978, he and a companion, Roy Bounds, drove from Purvis, Mississippi, to Hattiesburg, Mississippi, for the purpose of attending a movie. They arrived in Hattiesburg about 8:30 p.m., and drove to a Mr. Quik store at the corner of Hardy Street and 40th Avenue to purchase a six-pack of beer. The Mr. Quik store was glassed at the front with a four-foot walk running the length of the front, with a glass door opening to the inside. Several feet in front of the walk were a number of concrete parking bumpers, approximately six feet long, and about the width of an automobile, which stopped a vehicle from running upon the walk and possibly through the glass of the building. A four-foot square mat customarily was on the walk and against the glass door for use as customers went into the building.
When appellee drove through the parking lot up to the store, he stopped at one of the parking bumpers. The area was dimly lighted, there being only one light at the end of the building and one at the gas pumps in the parking area.
The mat was not at the front door, but had been moved. It was draped partly over the parking bumper on appellee's side and part of it was in the area between the bumper and the walk and over the end of the parking bumper into the parking lot. The mat was similar in color to the asphalt covering of the parking area, and, as appellee got out of his car and started toward the door, which was across the area where the mat lay, he was unable to see the mat and fell and injured his left knee. Appellee got up and went into the store, but was unable to make his purchase because of the pain in his knee. He returned to the automobile and Bounds went into the store, concluded the purchase, and talked with the lady on duty about the accident. The two of them went to the mat, moved it from the bumper and parking area, and placed it back at the front door of the building. Subsequently, appellee was seen and treated by a physician who eventually operated on his knee. He sustained serious injuries which were permanent.
In Georgia-Pacific Corp. v. Blakeney, 353 So.2d 769 (Miss. 1978), the Court again stated *Page 1380 
the principle relating to motions for directed verdicts:
 The rule, in determining whether a motion for directed verdict should be granted, requires the trial judge to consider the evidence on behalf of the party against whom a directed verdict is requested, along with all reasonable inferences, in the light most favorable to said party, disregard any evidence of the other party in conflict therewith, and, if the evidence and reasonable inferences to be drawn therefrom would support a verdict for such party, the motion for directed verdict should be denied. (Here the motion for directed verdict actually was a request for peremptory instruction). Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975); White v. Thomason, 310 So.2d 914 (Miss. 1975); Williams v. Weeks, 268 So.2d 340 (Miss. 1972); Clark v. Luther McGill, Inc., 240 Miss. 509, 127 So.2d 858 (1961); Sumrall Motor Co. v. Creel, 158 Miss. 262, 130 So. 151 (1930). [353 So.2d at 772].
When the plaintiff rested his case, the appellant called only one witness to the stand. He did not work for the appellant at the Mr. Quik location until sometime after the accident. Thus, the only proof in the record as to the condition of the premises and as to what happened was made by the appellee. The evidence and inferences show that the store operator's station was only a few feet from the front door where the mat was usually located. In the exercise of reasonable care, that individual knew, or should have known, that the mat had been removed and placed in another location. Therefore, the jury could have believed from the evidence that appellant had actual or constructive notice as to the condition of the premises, including poor lighting and the location of the mat draped over the bumper stop, and that such premises constituted a hazard and danger to the invited public.
While the cases of Mississippi Winn-Dixie Supermarkets, Inc.v. Hughes, 247 Miss. 575, 156 So.2d 734 (1963), and Millers ofJackson, Meadowbrook Road, Inc. v. Newell, 341 So.2d 101 (Miss. 1976), are not exactly similar to the case sub judice, since a condition was created within the store building by persons, who were probably customers, we think that actual notice or constructive notice was shown by the proof and inferences here.
We conclude that the lower court acted correctly in refusing to grant appellant a directed verdict.
 II.
Appellant claims that Instructions P-5 and P-9 for the appellee constituted error. Instruction P-5 is the only instruction obtained by the appellee on the issue of liability. The instruction referred to the lighting conditions and the bumper guard, over which the mat was draped. In addition to the appellee's testimony about the conditions at the place of injury and in the parking area, Mrs. Noel's attorney developed on cross-examination of appellee that the area was dark where the mat was located over the bumper guard, and that he could not see it. Instruction P-9 was the only instruction on damages and followed the proof. There is no reversible error in granting those instructions.
Instruction D-1 was a peremptory instruction and was properly refused. Instructions D-9, D-11 and D-13 were covered by other instructions granted to the appellant and would have been repetitious. Instruction D-12 was not supported by the evidence and was properly refused.
The lower court granted Instruction D-16 at the request of appellant, which told the jury that all of the instructions in the case should be considered together by the jury. We think that the jury was properly instructed and that there is no merit in this assignment.
 III.
The appellant last contends that the verdict of $75,000 is grossly excessive and evinces bias, passion and prejudice on the part of the jury, and that the jury ignored the testimony of appellee's physician, Dr. Thomas J. Dewey, III. *Page 1381 
Dr. Dewey first saw appellee on October 17, 1978, and diagnosed his condition as a badly-sprained left knee. He did not have X-rays made, but placed the knee in a splint and prescribed crutches for him. Appellee was admitted to Forrest General Hospital on November 8, 1978, and surgery was performed the next day. He was discharged November 15, 1978. His leg had been placed in a long cast and crutches were used for walking. Dr. Dewey saw appellee at intervals until April 20, 1979, when he was discharged. A brace was prescribed for appellee when any strenuous physical activity was being performed. Dr. Dewey estimated that appellee had a 3% to 5% permanent disability of the left knee. However, he previously had written a letter wherein he indicated that the disability was 40%. The doctor explained that finding by saying when appellee was nine to ten years old his knee was injured in a bicycle fall, and on March 15, 1977, he had an operation for a football injury. Both cartilages and a major ligament were taken from his knee.[1]
Appellee incurred medical expenses of $3,457.95 and sustained lost income in the amount of $7,271.60, aggregating special damages in the sum of $10,729.55. Appellee was working on an off-shore drilling rig at the time of the accident and was unable to pursue that occupation, at a substantial loss of future income. It was necessary for him to undergo special training to qualify for other employment. Appellee sustained considerable pain as a result of the injury.
When a previous injury or condition is aggravated, liability for damages will follow because of the aggravation, if fault is established. We have carefully considered the record relating to injuries and damages of the appellee and cannot say that the verdict of the jury evinces bias, passion or prejudice; or that the damages awarded are against the overwhelming weight of the credible evidence. See Woods v. Nichols, 416 So.2d 659 (Miss. 1982) and Walton v. Scott, 365 So.2d 630 (Miss. 1978).
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
[1] Dr. Dewey was a reluctant witness and refused to answer the subpoena issued for him. He came to court when the trial judge required that, unless he appeared at a certain time, the court would send a bailiff to attach and bring him into court. He appeared to be a hostile witness as a result thereof.