548 So.2d 970 (1989)
Douglas A. COPELAND
v.
CITY OF JACKSON, MS, et al.
No. 58317.
Supreme Court of Mississippi.
April 5, 1989.
Rehearing Denied August 2, 1989.
John H. Fox, III, Fox & Watson, Jackson, for appellant.
Tim Hancock, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BLASS, JJ.
*971 PRATHER, Justice, for the Court:
The propriety of an additur in a personal injury suit is the subject of this appeal. The case was originally before this Court in City of Jackson v. Copeland, 490 So.2d 834 (Miss. 1986). In that case, this Court affirmed the holding of the lower court as to the negligence of the City of Jackson and Willie Lee Butler, but reversed and remanded for a new trial as to the issue of Copeland's contributory negligence, if any, and damages. Id. at 839. On retrial in the Circuit Court of Hinds County, the jury awarded Copeland $40,000 in damages and found him to be thirty percent contributorily negligent. The trial judge granted an additur to $350,000.00 in Copeland's favor, but reduced the award by thirty percent to $245,000.00. Copeland and the City of Jackson appeal to this Court, and Copeland assigns as error the following:
(1) The trial court erred in upholding the jury's assessment of contributory negligence.
(2) The order of additur failed to take into consideration the additional loss and injury of the plaintiff.
(3) The trial court erred when it refused to admit into evidence the official report of the deceased Officer Hickman as a business record of the defendant City of Jackson.
(4) The trial court erred in refusing to grant the motion for mistrial.
(5) The trial court erred in granting the defendant's instruction D-9.
(6) The trial court erred in granting the defendant's instruction D-11.
(7) The trial court erred in denying plaintiff's instruction P-7.
(8) The trial court erred in denying plaintiff's instructions P-1 and P-13.

CROSS-APPEAL
The appellees City of Jackson and Willie Lee Butler assign as error the following:
(1) The trial court erred in setting aside the damages awarded by the jury and in granting an additur.

I.
On the evening of February 13, 1981, at about 8:00 p.m. Douglas Copeland was on his way to work at the Clarion-Ledger. He was driving east on Pascagoula Street in the City of Jackson. Pascagoula Street is a one-way street for east bound traffic which has been marked with three lanes and which also has parking spaces intermittently on either side of the street. It is intersected by Mill Street, Roach Street and Farish Street, in that order.
Appellee Willie Lee Butler was making garbage pickups on the same evening in a city-owned garbage truck. After picking up some trash at the Pascagoula-Roach Street intersection, Butler began traveling on Pascagoula in the left hand lane; while doing so, he looked in his rear view mirror in an attempt to move into the center lane and eventually into the right hand lane.
Butler testified that he was trying to move into the right hand lane, but could not do so because the traffic was too heavy. Both he and Copeland claimed to have been traveling east on Pascagoula Street between 25 and 30 miles per hour, although Butler admitted during his testimony that the odometer on his truck was broken. Copeland testified that once he turned into the right hand lane on Pascagoula Street, he never deviated from that lane. Butler testified that he never saw Copeland's car until he heard the sound of tires screeching, looked in the mirror, and when he looked back, saw Copeland's car crossways on his front bumper. The point of impact was just beyond the Pascagoula-Farish Street intersection.
Butler swerved to the left, and hit the brakes in an effort to shake Copeland's car loose, but he was unable to do so. The vehicles did not separate until they came to a stop after striking a telephone pole in front of the B.F. Goodrich Store on the north side of Pascagoula Street. The force of the blow severed the telephone pole at its base.
The accident resulted in the fracture of Copeland's first thoracic and cervical vertebrae. Three surgical procedures were *972 eventually required  the first to decompress the spinal column, the second, to insert acrylic rods on each side of Copeland's spine from his hairline to his shoulder blades in order to stabilize the area and allow the fusion of the bones, and finally, a third operation to remove the acrylic rods; however, he was not paralyzed.
The first lawsuit by Copeland against the City of Jackson and Willie Lee Butler resulted in a verdict for the defendant City and Butler. A motion for judgment notwithstanding the verdict (JNOV) was filed by Copeland, but was overruled; however, his concurrent motion for a new trial was granted. In November, 1983, a second trial upon the merits resulted in a judgment for Copeland in the amount of $350,000.00. However, the jury also found that Copeland was twenty-five percent negligent, thereby reducing his award of $350,000.00 by twenty-five percent.
This second trial was appealed to this Court and in City of Jackson v. Copeland, 490 So.2d 834 (Miss. 1986), this Court upheld the lower court's judgment regarding negligence as to the City of Jackson and its employee Butler. The trial court had given an instruction on contributory negligence; however, in instructing the jury, the trial court had erred in not properly instructing the jury on the facts necessary upon which to find Copeland's contributory negligence, if any. The case was remanded for a new trial on the issue of contributory negligence, if any, and damages only. Id. at 839.
After remand, the case was tried for the third time on January 12-15, 1987, and a peremptory instruction to the jury as to the negligence of the City of Jackson and its driver Butler, was given. The jury found that Copeland's loss and injury amounted to $40,000.00 and that he was thirty percent contributorily negligent, reducing his net judgment to an amount of $28,000.00. After the jury reached its verdict, the trial court, upon plaintiff's motion for a new trial or JNOV, entered an order of additur. The order entered by the trial court reinstated the award of damages to $350,000.00; the lower court did accept the jury's finding of contributory negligence on Copeland's part of thirty percent, and consequently reduced his judgment by $105,000.00, resulting in a net judgment of $245,000.00. Copeland then perfected his appeal to this Court and the defendant City of Jackson and Butler cross-appealed the additur made by the lower court.

II.

DID THE TRIAL COURT ERR IN UPHOLDING THE JURY'S ASSESSMENT OF CONTRIBUTORY NEGLIGENCE?
Under this assignment of error, Copeland contends that it was improper for the trial court to grant a jury instruction concerning his contributory negligence due to a failure of proof on the appellee's part establishing his negligence. This Court agrees.
There were only two witnesses at trial who testified as to the actual details of the accident itself. These two witnesses were the appellant Douglas Copeland and the appellee Willie Lee Butler. Copeland testified that his car was in good running order, and that he never exceeded 25 to 28 miles per hour. He also testified that he was driving in the extreme right-hand lane of Pascagoula Street and that he never deviated from this lane. The only other things he remembered from the accident were feeling the impact of something from his rear and looking through his passenger window at the telephone pole rushing to meet him.
In support of their claim that Copeland was contributorily negligent, the appellees only put on two witnesses, Appellee Willie Lee Butler and Officer Phil Burnham. Butler testified that he began driving on the left hand lane of Pascagoula Street, attempting to move across the center lane and eventually into the right hand lane. However, there were cars passing on either side of him, and he was not able to get into the right hand lane as soon as he would have liked. He also testified that Copeland's car had to be on the right hand side of the garbage truck. Butler never saw *973 Copeland's car until it was "crossways" on the front bumper of his truck. He also testified on cross-examination that there was a "pretty good chance" that he could have been over in the right hand lane, and pictures of Copeland's car show an impact point on the left rear side of his vehicle. Butler also offered no testimony concerning negligence on Copeland's part; indeed, this would have been difficult for him to do since he never saw Copeland's vehicle at all until it was on the front of his truck. Thus, Butler's testimony reveals no facts constituting negligence by Copeland.
Officer Burnham was one of the first officers on the scene after the accident took place. However, the only noteworthy testimony he presented was the fact that he found skidmarks in the far right hand lane of Pascagoula Street going east, i.e., the lane in which Douglas Copeland was traveling when the accident took place. He also presented no testimony of any kind as to a negligent act on Copeland's part. Therefore, there was simply no evidence present in this record to support a finding of contributory negligence.
It is well established under Mississippi law that jury instructions should only be granted where there is evidence presented to support the giving of those instructions.
A party to an action is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction.
Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986). See also Detroit Marine Engineering v. McRee, 510 So.2d 462, 465-466 (Miss. 1987); Barkley v. Miller Transporters, Inc., 450 So.2d 416, 419 (Miss. 1984); Lewis Grocer Co. v. Williamson, 436 So.2d 1378, 1380 (Miss. 1983); Alley v. Praschak Machine Co., 366 So.2d 661, 665 (Miss. 1979).
There was simply no evidence presented in the record before this Court to justify the giving of a contributory negligence instruction, and it is the opinion of this Court that the trial court was in error in granting such an instruction. Therefore, it is the opinion of this Court that this assignment of error has merit. The reduction of the verdict by thirty percent (30%) is reversed.

III.

DID THE TRIAL COURT ERR IN SETTING ASIDE THE DAMAGES AWARDED BY THE JURY AND IN GRANTING AN ADDITUR?

DID THE ORDER OF ADDITUR FAIL TO TAKE INTO CONSIDERATION THE ADDITIONAL LOSS AND INJURY OF THE PLAINTIFF?
The Court elects to discuss Copeland's assignment No. 2 and the cross-appeal together. As noted earlier, when this case was first tried, Copeland was awarded $350,000.00 in damages. After this Court remanded the case to the trial court for a redetermination of the issue of contributory negligence, if any, and damages, the jury awarded Copeland $40,000.00. The trial judge then granted an order of additur, increasing the award to the original $350,000.00 figure from the second trial.
It has been conceded by the appellees that Copeland has accumulated almost $20,000.00 in actual damages, attributable to loss of income, hospital bills, doctors' bills and drug bills. Dr. Walter Neill testified at trial that the fractures of Douglas Copeland's spinal vertebrae resulted in a loss of a certain amount of sensory capacity from approximately chest level down to the appellant's feet. Dr. Neill also testified that Copeland has lost a good deal of muscle structure and also suffers from ankle clonus. Copeland also has to turn his whole body when he attempts to turn around. There is also a possibility of spinal stenosis resulting later in Copeland's life. It is also possible that Copeland's spine will have to be decompressed again, and there is also some risk of arthritis.
Copeland, a young adult in his 20's, also testified to the amount of physical activities in which he engaged before the accident, and how he had been affected by the accident. He testified as to a lack of sensation in certain portions of his body, and also testified as to how his education plans had been affected. The pain he suffers *974 occurs daily, and he has also been affected socially by the accident.
Lucille Copeland, Douglas's mother, testified how her son seemed to be tired more often, and she also testified that he seemed to have more problems sleeping. She also testified that her son was much less active athletically than he had been before the accident.
Dr. Barry Amyx, a psychiatrist who did not testify at the first trial, testified at length about how Copeland would be affected psychologically by the accident. He testified that Copeland had a reduced sense of pain and also suffered from sleeplessness. It was also his opinion that Copeland suffered from some symptoms of depression and that eventually he could have a major depression. He also testified that due to the nature of Copeland's injury, his sexual urges were dramatically decreased, due at least in part to the fact that he had reduced sensitivity from chest level down.
Despite the presence of this voluminous testimony, the jury only awarded Copeland $40,000.00 as damages. Upon Copeland's motion for a new trial or a JNOV, the trial court entered an order of additur restoring the damages to the original figure of $350,000.00 from the second trial, stating that the nominal amount of damages awarded was so insufficient as to shock his conscience. Clearly the verdict was against the overwhelming weight of the evidence. Howard Bros. of Phenix City, Inc. v. Penley, 492 So.2d 965 (Miss. 1986).
Section 11-1-55 of Miss. Code Ann. (Supp. 1988) reads as follows:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
This Court has held on many occasions that the test for deciding whether or not to overturn a granting of additur or remittitur is whether or not "the trial court manifestly abused its discretion." Holmes County Bank & Trust v. Staple Cotton Co-Op, 495 So.2d 447, 448 (Miss. 1986). See also James v. Jackson, 514 So.2d 1224 (Miss. 1987); Mississippi State Highway Commission v. Antioch Baptist Church, 392 So.2d 512 (Miss. 1981). Thus, trial judges are given a great deal of discretion in making decisions concerning additurs or remittiturs. However, it is also true that jury awards will not generally be set aside unless they are shown to be unreasonable. Holmes County Bank at 451.
After reviewing the extensive testimony presented in this case concerning Douglas Copeland's prior good health, medical expenses, pain and suffering and permanent physical impairment, this Court is of the opinion that the trial court did not abuse its discretion in reinstating the original amount of damages awarded to Copeland, namely $350,000.00. Therefore, it is the opinion of this Court that the cross-appeal of the City and Butler is without merit. However, it is also the opinion of this Court that the trial court did not abuse its discretion by refusing to grant an additur greater than the original $350,000.00 damages figure.

IV.

DID THE TRIAL COURT ERR BY REFUSING TO ADMIT INTO EVIDENCE THE OFFICIAL REPORT OF THE DECEASED OFFICER HICKMAN AS A BUSINESS RECORD OF THE DEFENDANT CITY OF JACKSON?
At trial, Copeland attempted to introduce into evidence the police report filed by Officer *975 Billy Hickman at the scene of the accident. The City objected, and after extensive testimony concerning the admissibility of the report, the trial court sustained the objection to the introduction of the report. Copeland now contends on appeal that it was error for the trial court to refuse to allow into evidence Officer Hickman's report. This Court agrees with the appellant.
As one of the exceptions to hearsay, Rule 803(6) of the Rules of Evidence reads as follows:
Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
The comments to Rule 803(6) are also helpful for analyzing the admissibility of police reports:
However, the source of the material must be an informant with knowledge who is acting in the course of the regularly conducted activity. This is exemplified by the leading case of Johnson v. Lutz, 253 New York 124, 170 N.E. 517 (1930), which is still the applicable law today under the rule. That case held that a police report which contained information obtained from a bystander was inadmissible; the officer qualified as one acting in the regular course of a business, but the informant did not.
(Emphasis added). Therefore, police reports prepared during the investigation of an accident should be admissible into evidence.
On a few occasions, this Court has addressed this issue. In Gandy v. State, 355 So.2d 1096 (Miss. 1978), the Court held that admitting into evidence a sketch drawn by a highway patrolman of the scene of an accident was improper, because to do so invaded the province of the jury. Id. at 1099-1100. However, those facts are distinguishable from those present in this case. In this case, the report in question was prepared at the time of the accident in accordance with the rules established by the police department of the City of Jackson. This Court has recently addressed the issue of the admissibility of documents under Rule 803(6) in Watson v. State, 521 So.2d 1290 (Miss. 1988). The Court held in that case that documents which were prepared as part of normal banking procedure were admissible into evidence. Id. at 1295.
In another recent case, the Court suggested by way of dicta that law enforcement reports should be allowed into evidence. In Minnick v. State, 551 So.2d 77 (1988) (petition for rehearing pending), slip opinion at 88-89, the Court held as a general principle that reports prepared by law enforcement officials in the regular course of their activities should be admissible into evidence.
In the case at bar, the Chief of Police for the City of Jackson testified at length that the report filed by Officer Hickman in this case was prepared in the regular course of his duties as a police officer. Although the report in question was allowed into evidence for identification purposes, it was never admitted into evidence for the jury to view. It is the opinion of this Court that it was error for the trial court to not allow this report into evidence. However, it was harmless error in view of the additur given and does not require a new trial.
In holding such report admissible we should not be understood as holding all the contents of the report were necessarily admissible. For example, there may be notations in such a report which are recitations of statements of others, and would be inadmissible even though the officer were *976 present in court testifying. The report is simply a substitute for the officer appearing in person and testifying.

V.

DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE MOTION FOR MISTRIAL?
The case was submitted to the jury at approximately 5:00 p.m. following the third day of trial. The jury was unable to reach a verdict that evening and was called back the next morning to finish their deliberations. A motion for mistrial was filed by the appellant Douglas Copeland at 9:00 a.m. on the fourth morning. The basis of this motion for mistrial apparently is the fact that the jury members were arguing in a loud and contentious manner, according to Copeland's brief.
There is nothing in the record to support any of these allegations by Copeland, and therefore it is the opinion of this Court that this assignment of error should be overruled.

VI.

DID THE TRIAL COURT ERR IN GRANTING DEFENDANT'S INSTRUCTIONS D-9 AND D-11 AND IN DENYING PLAINTIFF'S P-7?
Instruction D-9, as granted, reads as follows:
The court instructs you that when overtaking another automobile, the passing must be effectuated in such a way as to be made completely without interference with the safe operation of the vehicle being overtaken and, if you find from the evidence that Douglas Copeland was overtaking or passing the vehicle being driven by Willie Lee Butler in a manner inconsistent with that duty, then it is your sworn duty to find that he was contributorily negligent.
Instruction D-11, as granted, reads as follows:
The Court instructs you that the plaintiff, Douglas Copeland, at the time of the accident, had the duty to use such care as a reasonably prudent and capable driver would under the circumstances and to continue to keep on the alert and keep a proper lookout, to anticipate the presence of other vehicles upon the streets, to constantly keep his vehicle under control, and to drive at a rate of speed as to enable him to avoid any collision with any vehicle which came into his vision or under his observation. If you find from the evidence that Douglas Copeland failed in that duty, then he was contributorily negligent.
As noted under assignment of error No. 1, this Court found no evidence in the record to indicate that Copeland was contributorily negligent. No testimony was presented by the City which would indicate that Copeland was operating his vehicle in an unsafe manner. Therefore, this Court agrees with Copeland that there was no testimony to support the giving of these instructions. However, in view of the additur, the error does not require reversal.
Additionally, the trial court's refusal of P-7 was proper because other instructions which were granted adequately address the burden of proof issue contained in Instruction P-7. There is no merit to this assignment of error.

VII.

DID THE TRIAL COURT ERR IN DENYING PLAINTIFF'S INSTRUCTION P-1 AND P-13?
The trial court granted an instruction which required the jury to find that the defendants Willie Lee Butler and the City of Jackson were negligent and which instructed the jury to find for the plaintiff against the City of Jackson and Willie Lee Butler. Thus, the crucial issue is whether or not the two instructions which were given by the trial court were adequate to compensate for not giving instructions P-1 and P-13. It is the opinion of this Court that the given instructions adequately instruct the jury that they are to find in favor of the plaintiff Douglas Copeland. The jury followed the instruction and returned a plaintiff's verdict. Therefore, it is *977 the opinion of this Court that this assignment of error is without merit.

VIII.
For the foregoing reasons it is the opinion of this Court that the decision of the trial court regarding the $350,000.00 additur award should be affirmed in response to the original inadequate damages award; however, it is also the opinion of this Court that the reduction of the verdict because of the alleged contributory negligence of Douglas Copeland should be reversed because there was simply no evidence presented in this record which would indicate that Copeland was negligent in any way. The reduction of the award after additur for contributory negligence of thirty percent is reversed, and the judgment of $350,000.00 is affirmed unless the City of Jackson within fifteen (15) days from the release of this opinion refuses to accept the additur in favor of a fourth trial on damages only. Miss. Code Ann. § 11-1-55 (Supp. 1988).
AFFIRMED IN PART AND REVERSED IN PART ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs as to parts IV., V., VI., and VII., and dissents as to parts II., and III.
Petition For Rehearing Denied: ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
ROY NOBLE LEE, C.J., filed a separate concurring opinion joined by HAWKINS, P.J., PRATHER, SULLIVAN, ANDERSON and BLASS, JJ.
DAN M. LEE, P.J., dissents with separate written opinion.

ON PETITION FOR REHEARING
ROY NOBLE LEE, Chief Justice, concurring with the majority opinion:
On the petition for rehearing, which was denied by a majority of the Court, Presiding Justice Dan Lee filed a dissenting opinion, which stated on the first page that "I believe that the law of the case was settled on the first direct appeal that a jury question was made on the issue of Copeland's contributory negligence, ..." and on the last page the opinion reflects, "The third jury having found on retrial that Copeland was contributorily negligent, I am unable to understand how this Court can simply sweep that verdict under the rug."
The law of the case may be settled in one trial, but the facts of a case, particularly when the case is remanded for a new trial, may vary from trial to trial and are hardly ever the same on retrial. Such is the situation in the case sub judice.
In the previous reported case of the second trial, City of Jackson v. Copeland, 490 So.2d 834 (Miss. 1986), the Court said:
In the case at bar, there are no instructions offered by Butler and the City which attempt to inform the jury of what facts constitute negligence.
* * * * * *
Nevertheless, reversible error was committed since the jury was not presented with an instruction stating what facts would constitute negligence. Consequently, since it may not be said from a review of the record that Copeland was in no way contributorily negligent, it seems that the case should be reversed and remanded for a new trial.
* * * * * *
For the reasons stated above, we affirm the lower court on the question of the City's and Butler's negligence, but reverse and remand this case for a new trial on the question of Copeland's negligence, if any, and damages.
490 So.2d at 838, 839. (Emphasis added)
On the third trial, a review of the record reflects that no negligence was proved against Copeland. Therefore, the law of *978 the case mandated the majority decision on the facts.
HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON and BLASS, JJ., concur with this opinion.
DAN M. LEE, Presiding Justice, dissenting:
Three juries have tried this case. Three juries have found that the appellant Douglas Copeland was negligent to some extent: The first jury found totally in favor of the defendants/appellees; the second and third juries found Copeland contributorily negligent. This Court reviewed this case on direct appeal after the second trial. We found at that time that there was sufficient evidence to support a jury finding of contributory negligence. Yet, on direct appeal from the third trial, this Court, incredibly, found that there was not a shred of evidence to support the jury's finding of contributory negligence on the part of Copeland. Because I believe that the law of the case was settled on the first direct appeal that a jury question was made on the issue of Copeland's contributory negligence, I respectfully dissent from the majority's denial of appellees' petition for rehearing of this case.

FACTS
On February 13, 1981, Douglas Copeland was driving east on Pascagoula Street in Jackson, Mississippi, when his car collided with a city-owned garbage truck driven by Willie Lee Butler. Pascagoula Street is a one-way street for east-bound traffic, and has three lanes, with intermittent parallel parking spaces on both sides of the street. According to Butler, he had moved from the left-hand lane to the center lane and was trying to move to the right-hand lane but was unable to do so because traffic was too heavy. Butler testified that he looked in the rear view mirror, and when he looked again to the front of the truck he saw Copeland's car turned crossways in front of the truck. Butler applied his brakes and swerved to the left, but Copeland's car was stuck on the truck's bumper and would not dislodge. The vehicles came to a stop after hitting a telephone pole on the north side of Pascagoula Street.
Copeland suffered two fractured vertebrae which required three surgical procedures. According to medical testimony, there is a 20-percent probability that Copeland might develop spinal stenosis in the future as a result of his injuries. Copeland's actual damages were approximately $20,000.00.
Copeland sued the City of Jackson and Willie Lee Butler, seeking actual and compensatory damages in the amount of $6,000,000.00. Copeland's theory was that Butler had pulled over into the right-hand lane, hitting his car on the left rear side and causing it to spin sideways into the front of the truck. (There was a "black scuff mark" on the left rear fender of Copeland's car.) Although Copeland testified that he did not see the truck before the collision occurred, he maintained that Butler must have pulled over into the right-hand lane, because he (Copeland) had not moved from the right-hand lane since turning onto Pascagoula from Gallatin Street, several blocks west of the scene of the accident.
The first trial resulted in a jury verdict for the defendants. A new trial was ordered, however, and on retrial the jury returned a verdict in favor of Copeland. The jury assessed damages in the amount of $350,000.00, but found Copeland to be 25 percent comparatively negligent, thereby reducing his award to $262,500.00. Both parties appealed to this Court from that judgment. See City of Jackson v. Copeland, 490 So.2d 834 (Miss. 1986). This Court affirmed the judgment of the trial court as to the finding of negligence on the part of Butler and the City of Jackson. The Court reversed and remanded the case, however, for a new trial on damages and on the question of Copeland's alleged contributory negligence. Reversal on the latter point was required because of an inadequate jury instruction on contributory negligence.
The case was tried for a third time on January 12-15, 1987, and a peremptory instruction was given to the jury as to the *979 negligence of the City of Jackson and its driver, Butler. The jury found that Copeland's damages amounted to $40,000.00, but also found that he was 30-percent negligent, thereby reducing his award to $28,000.00. The trial judge ordered an additur to $350,000.00 which, when reduced by 30 percent, resulted in an award of $245,000.00 in favor of Copeland.
Copeland appealed from this judgment, claiming inter alia that the trial court erred in upholding the jury's assessment of contributory negligence since, according to him, the defendants failed to offer any proof establishing negligence on his part. Butler and the City of Jackson cross appealed, objecting to the trial court's grant of additur. Copeland v. City of Jackson, 548 So.2d 970 (Miss. 1989). The trial court's grant of additur was affirmed by a majority of this court. The majority also found that there was no evidence adduced at trial which showed any negligence on the part of Copeland. The judgment of the trial court was therefore reversed on this point, eliminating the 30 percent reduction in damages and resulting in an award of $350,000.00. I dissented, without opinion, to the Majority's holding on both of the aforementioned points. Subsequently, the City of Jackson filed a petition for rehearing on the contributory negligence issue. This petition was denied. Because I believe that the law of the case was settled on the first direct appeal that the issue of contributory negligence was a question for the jury, I am compelled to dissent to the denial of the City's petition for rehearing.

DISCUSSION
In our review of the second trial of this case, this Court specifically found that a jury question was made on the issue of contributory negligence on the part of Copeland, but found that the jury instructions on contributory negligence were faulty. Justice Sullivan, writing for the Court, stated:
In the case at bar, there are no instructions offered by Butler and the City which attempt to inform the jury of what facts constitute negligence.
Butler and the City correctly note that there was ample evidence and testimony presented to support a finding of contributory negligence. However, ..., this is not conclusive. The jury must be instructed as to the facts constituting such negligence, and, if not, reversible error has been committed.
It should be pointed out, however, that a jury has the duty and prerogative to make a decision as to contributory negligence and to reduce the award of damages, if any, in accordance with any contributory negligence.
City of Jackson v. Copeland, 490 So.2d 834, 838-39 (Miss. 1986) (emphasis added).
On retrial, the jury was given two contributory negligence instructions which specified the facts that would constitute contributory negligence. Instruction D-9 stated as follows:
The Court instructs you that when overtaking another automobile, the passing must be effectuated in such a way as to be made completely without interference with the safe operation of the vehicle being overtaken and, if you find from the evidence that Douglas Copeland was overtaking or passing the vehicle being driven by Willie Lee Butler in a manner inconsistent with that duty, then it is your sworn duty to find that he was contributorily negligent.
Instruction D-11 stated:
The Court instructs you that the plaintiff, Douglas Copeland, at the time of the accident, had the duty to use such care as a reasonably prudent and capable driver would under the circumstances and to continue to keep on the alert and keep a proper lookout, to anticipate the presence of other vehicles upon the streets, to constantly keep his vehicle under control, and to drive at a rate of speed as to enable him to avoid any collision with any vehicle which came into his vision or under his observation. If you find from the evidence that Douglas Copeland failed in that duty, then he was contributorily negligent.
*980 On these instructions, the jury found Copeland to have been 30 percent contributorily negligent. I believe that on the third trial it was the settled law of the case that a jury issue was made on the question of Copeland's contributory negligence and, further, I believe that there was sufficient evidence to support the jury's finding.
In Continental Turpentine and Rosin Co. v. Gulf Naval Stores Co., 244 Miss. 465, 480, 142 So.2d 200, 207 (1962), this Court stated:
[A]s a general rule, when an appellate court passes upon a question and remands the cause for further proceedings, the question there settled becomes the `law of the case' upon a subsequent appeal, provided the same facts and issues which were determined in the previous appeal are involved in the second appeal.

(quoting 3 Am.Jur., Appeal and Error, Sec. 985, p. 541) [emphasis added].
In Copeland v. Robertson, 236 Miss. 95, 112 So.2d 236 (1959) (overruled in part on other grounds by Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), this Court addressed a situation similar to that in the case sub judice. In that case Mrs. Robertson had sued Dr. Copeland for his alleged malpractice in performing a complete hysterectomy on her. At the first trial, the trial court granted a directed verdict for the defendant at the close of the plaintiff's case. On appeal, this Court, in holding that the directed verdict should not have been given, found that because the evidence was in dispute on the question of the doctor's negligence, the issue should have been submitted to the jury. The judgment of the trial court was reversed and the case remanded for a new trial. On retrial, the issue of the doctor's negligence was submitted to the jury, and the jury returned a verdict for the plaintiff in the amount of $17,500. On appeal from that judgment, Dr. Copeland contended that there was not sufficient evidence of negligence to submit the issue to the jury. This Court applied the "law of the case" doctrine, stating:
There were conflicts in the evidence on this trial, both as to whether the operation should have been performed at all or in the manner in which the operation was performed, just as there were in the first trial. This being true, the law of the case was settled on the first appeal, and the cause was properly submitted to the jury.
236 Miss. at 111, 112 So.2d at 241-42.
I fail to see how the majority in the instant case can ignore the "law of the case" as settled in our decision at 490 So.2d 834. Justice Sullivan, writing for a unanimous Court, stated:
The evidence in the case at bar does not clearly establish negligence on one party only. The testimony of both Butler and Copeland, who were the only eyewitnesses called to testify, states that neither of them knew exactly what had happened. Thus, it is for the jury to determine which of the parties  indeed possibly both of them  were negligent and to what degree, if any.
490 So.2d at 839.
In his response to the City's petition for rehearing, Copeland argues that the "law of the case" doctrine does not apply here because the same testimony and evidence are not before this court on this record as were before the court in the record in 490 So.2d 834. Copeland contends that in the third trial the testimony of Officer Phil Burnham, as well as that of Butler, is different from that given at the second trial.
It is true that Officer Burnham recanted his earlier testimony regarding the location of skid marks on the street leading up to the point where the two vehicles came to a stop. At the second trial he had testified unequivocally that those skid marks began in the center lane and at no point did they extend into the right lane. At the third trial, however, he testified that the skid marks began in the right lane.
According to Copeland, with the change in Burnham's testimony, there was no evidence to support the defense theory that Copeland had moved into the center lane when the initial impact occurred. Copeland's argument overlooks several important factors, however.
*981 First, the jury did not have to believe Burnham's revised testimony. When defense counsel attempted to impeach Burnham by asking him about his earlier testimony, Burnham did not deny that he had earlier testified that the skid marks began in the center lane. Although he did not explicitly admit to having testified differently at the previous trial, the jury was put on notice that Burnham had somehow changed his testimony. This Court has stated too often to need repeating that the jury is the sole judge of a witness' credibility and the weight to be given his testimony, and that the jury may reject any or all parts of a witness' testimony. See, e.g., Wells Fargo Armored Service Corp. v. Turner, 543 So.2d 154, 156 (Miss. 1989); BFGoodrich, Inc. v. Taylor, 509 So.2d 895, 903 (Miss. 1987); Garcia v. Coast Electric Power Ass'n, 493 So.2d 380, 382 (Miss. 1986); Travelers Indemnity Company v. Rawson, 222 So.2d 131, 134 (Miss. 1969).
Secondly, the defendant Willie Lee Butler testified adamantly and repeatedly that he was in the center lane of traffic when the accident occurred. If the jury believed Butler's testimony on that point, it certainly would have been reasonable to infer that Copeland must have moved from the right-hand lane into the center lane. The majority states that Butler testified on cross-examination "that there was a `pretty good chance' that he could have been over in the right hand lane." Just to set the record straight, Butler did answer "yep" to the question "And its a good chance you could have been in the right lane?" However, this was after Butler had already responded several times that he was certain he was in the center lane when the accident occurred, but the plaintiff's attorney persisted, in an obvious attempt to confuse the witness, until he elicited the tentative "yep." In fact, the trial judge sustained an objection to this part of the questioning as being argumentative.
There is other testimony from which a jury might have found contributory negligence on the part of Copeland. The accident happened on a Friday evening between 7:30 and 8:00 o'clock. Traffic was very heavy, as there was an event taking place at the City Auditorium on Pascagoula Street. Copeland testified that he stopped for a red light at the intersection of Pascagoula and Roach Streets, then waited for five to ten seconds after the light turned green before proceeding, because he wanted to catch all the other traffic lights green. He stated that after proceeding he increased his speed to between 25 and 30 m.p.h. because that was the speed necessary to catch all the lights green. Yet he testified that in the vicinity of the auditorium he observed two cars with brake lights on, either letting passengers out or in the process of parking. Copeland stated:
As I recall, there was one [car] that was in the extreme righthand lane and from that distance I could not tell if they were attempting to get into a parking place or letting passengers out, and I believe there was one in the center lane that had stopped, probably to let passengers out.
(R. 163-64). Based on this testimony, the jury might reasonably have believed that Copeland attempted to move out of the right-hand lane in order to avoid having to slow or stop for the cars ahead of him. Furthermore, a psychiatrist called as a witness by Copeland admitted that Copeland told him that he was "fishtailing" when the accident occurred. The jury might also have found that because traffic was heavy and cars were unloading in that area, Copeland failed to maintain a safe rate of speed for the conditions, or that he failed to keep a lookout for other vehicles. As Justice Robertson stated in City of Jackson v. Locklar, 431 So.2d 475 (Miss. 1983):
It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Some guesswork and speculation are necessarily involved in practically all jury verdicts, including those no *982 one would dream of suggesting be disturbed.
431 So.2d at 478.
Despite the variations between testimony in the second trial and that in the trial on which this appeal is based, two factors remained constant: Butler and Copeland were the only eyewitnesses to testify, and neither of them knew exactly what happened. Under those circumstances, the law of the case was settled that the question of Copeland's contributory negligence was an issue for the jury. The third jury having found on retrial that Copeland was contributorily negligent, I am unable to understand how this Court can simply sweep that verdict under the rug. I would grant the petition for rehearing and reinstate the jury verdict.